**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James HIGGINS, Defendant-Appellant.**

**No. 16868.**

United States Court of Appeals
Seventh Circuit.

June 27, 1969.

Mitchell Ware, Chicago, Ill., Robert K. Hick, Oak Park, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Lawrence J. Cohen, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel, for appellee.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and BEAMER, District Judge.[1]

DUFFY, Senior Circuit Judge.

Defendant Higgins was charged with sale of heroin on October 28, 1964 (Count 1); possession of heroin on that date (Count 2); sale of heroin on November 10, 1964 (Count 3) and possession of heroin on that date (Count 4). After a jury trial, defendant was found guilty on all counts and received a sentence of imprisonment for six years.

An appeal was taken from the judgment of conviction. This court affirmed in United States v. Higgins, 362 F.2d 462 (7 Cir., 1966), cert. den. 385 U.S. 945, 87 S.Ct. 316, 17 L.Ed.2d 224.

About one and a half years later, defendant filed a motion for a new trial based upon alleged newly discovered evidence. The District Court denied this motion and this appeal is from such denial.

In support of his motion for a new trial, defendant produced a sworn statement from one Otis Patterson dated October 27, 1967, in which Patterson claimed that during the period described in the indictment, defendant Higgins sold narcotics to him and not to the agent Turnbou, and that the agent was not present at the sale, and that there was only one sale. Defendant did not offer to produce Patterson to testify at a post-trial hearing.

At the trial, undercover agent Turnbou testified as to two purchases of heroin from the defendant on October 28, 1964 and November 10, 1964, respectively. He testified that on each occasion he was accompanied by an informant, later identified as Patterson; that he handed money to the defendant who in turn, handed Turnbou a quantity of heroin.

Patterson did not testify at the trial. The record indicates that prior to the trial, he informed defendant's counsel that he would not testify but would plead

the Fifth Amendment. At that time, Patterson was charged with the sale of narcotics.

Turnbou testified that on October 28th he and the informant went to Ida's Sweet Shop where the informant introduced him to defendant Higgins; that the transaction was completed across the street at Red's Lounge where the narcotics were handed to Turnbou by Higgins. He also testified the second transaction on November 10th was completed at Ida's Sweet Shop, informant again being present.

Agent Vinsik testified that on one of the days mentioned in the testimony, he was parked in an automobile about a half block distant and he watched Turnbou and informant Patterson go into the candy store mentioned by Turnbou, and that thereafter he saw them come out and go into Red's Lounge. He testified he was similarly parked on a second occasion when he saw Turnbou and Patterson go into the Sweet Shop, then next door to the cleaners, and then back to the Sweet Shop. This testimony is completely inconsistent with Patterson's version because, in his statement, Patterson represented that he and the agent never went to the store together and that he [Higgins] had never even seen Turnbou before the date of the trial.

Patterson himself executed sworn statements contemporaneously with the alleged transactions which corroborate the agent's testimony. Heroin was delivered to the government chemist on the relevant dates by the narcotic agents.

Another significant point is that Turnbou made a record of what happened after the event and long before the trial. The defendant implied that occurrences subsequent to the alleged sale provided a motive for Turnbou's supposed false testimony. Yet, he failed to produce any report which described the alleged sales differently, although they clearly would have been permissible to impeach Turnbou.

Defendant urges that Patterson's statement should be given credence because

Turnbou was unable to describe, in detail, the inside of Red's Lounge. Turnbou was there on one occasion for perhaps five minutes. Under the circumstances, it is not surprising that sometime later he did not recall in detail, the interior arrangements of Red's Lounge.

Defendant also places reliance on his statement that Turnbou was later transferred to California, and subsequently thereto, left the Government service. We do not see why such occurrence, if true, had any significance to the District Judge as to the truth and reliability of agent Turnbou's testimony.

Defendant's final argument in support of his claim of abuse of discretion by the trial judge is that the latter used the wrong formula in determining whether to grant a new trial. Defendant says that instead of using the test in Larrison v. United States, 7 Cir., 24 F.2d 82, 87, he should have used the test stated in United States v. Rutkin, 3 Cir., 208 F.2d 647, 649. Defendant urges that the *Larrison* standard should be used only in perjury or recantation cases. The essential difference between the two is that the *Larrison* test focuses on testimony given at the previous trial and whether that testimony is worthy of belief. Thus, a new trial is granted when (a) " * * * [t]he court is reasonably well satisfied that the testimony given by a material witness is false; (b) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it, or did not know of the falsity until after the trial; and (c) that without it the jury might have reached a different conclusion."

In *Rutkin,* on the other hand, the focus is on the newly offered evidence. Thus a new trial should be granted when: (1) The evidence is in fact newly discovered and has come to the knowledge of the moving party since the trial. (2) It was not owing to the want of due diligence that it was not discovered sooner. (3) It is so material that it would probably

produce a different verdict if a new trial were granted.

Thus *Larrison* concerns itself with whether a witness committed perjury whereas *Rutkin* relates to another person's version of a given matter although even such distinctions are relative. At first blush, Patterson appears to have offered a different version of what transpired, but a closer examination reveals that the gist of his testimony is that Turnbou testified falsely. It is irrelevant that he told of another transaction. Hence, the important decision for the trial judge to make in the instant case was whether Turnbou perjured himself. We hold that the trial judge was fully justified in finding that the testimony was not false. At the trial the judge witnessed the demeanor and heard the testimony of Turnbou and Vinsik. He was thus in an excellent position to judge their credibility.

We hold there was no error on the part of the trial judge in denying the motion for a new trial.

Affirmed.