**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David Galvin BECKER, Defendant-Appellant.**

**No. 18659.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 3, 1972.

Decided July 13, 1972.

Rehearing Denied Oct. 4, 1972.
Certiorari Denied Jan. 8, 1973.
See 93 S.Ct. 910.

Charles A. Bellows, Bernard B. Brody, William J. Nellis, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Richard F. Sprague, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KILEY, Circuit Judge.

KILEY, Circuit Judge.

Defendant Becker was convicted by a jury of wilfully and knowingly possessing TV sets stolen from interstate commerce in violation of 18 U.S.C. § 659. He appealed. We affirm the conviction in Part I of this opinion.

While the appeal was pending, Becker moved for a new trial in the district court. This court, on motion of Becker, then remanded the cause to the district court for the limited purpose of hearing the new trial motion. The district court then denied the new trial motion and, pursuant to our direction, certified its decision to this court. The supplemental record of that hearing is here, and supplemental briefs have been filed on the issues whether the district judge abused his discretion in denying the motion, and whether Becker's right to due process was denied by the government's knowing use of "false" testimony at the trial. We decide those issues in favor of the government in Part II of this opinion.

## PART I.

At the trial Becker and the government entered into a partial stipulation of facts, read to the jury: 142 cartons of Sears, Roebuck & Co. TV sets, each valued in excess of $100.00, were part of an interstate shipment from Illinois to New Jersey. The cartons were stolen while in commerce on or about September 10, 1969, and were thereafter received by Becker at the warehouse of his World Wide Warehouse, Inc., in Chicago, Illinois.

The principal issue [1] presented is whether Becker's guilty knowledge of the theft of the TV sets was proved beyond a reasonable doubt.

Becker's defense theory was that he had received the Sears TV sets in the ordinary course of business without knowledge of their theft. He contended that the TV sets had been consigned to him by a Standard Distributing Company, and that he had been given authority to sell the TV sets with net proceeds to be sent to Standard.

There was ample testimony from which the jury could infer that Becker had not previously stored new TV sets in his warehouse; that he was not an authorized Sears dealer; that he received and warehoused the stolen TV sets on or about September 12, 1969; that he did not send a copy of the warehouse receipt of the TV sets to Standard, although it was customary to send copies to shippers; that shortly after receiving the stolen TV sets he was selling them at prices suspiciously below cost; and that he sold the stolen TV sets COD-cash only, and gave no receipt to the buyer although it was normal to do so.

Mrs. Osten, Becker's secretary for eleven years, testified [2] that the shipment of the new Sears TV sets from which Becker made subsequent sales arrived at the warehouse on or about September 12, 1969, and that the shipment was from the Standard Distributing Company. She also testified that although she made out a warehouse receipt to Standard dated September 12, 1969 (Exhibit 15), she sent to Standard neither a receipt for the shipment nor the net proceeds of the sales, although it was normal practice to do so. Mrs. Osten said that the reason for this was that she knew neither the name of the person who arranged for the warehousing of the TV sets nor the address of Standard to which she could send a receipt for the goods.

Mrs. Osten's testimony generally was vague, confused and confusing. The jury could well consider incredible her testimony that she did not know where to send the proceeds from or the receipts for the TV sets—especially in view of the aggregate value of the shipment, approximating $40,000. And her testimony with respect to a bill of lading dated September 16, 1969, covering

1. The contention that the government failed to prove that the sets had value in "excess of $100.00" we think is frivolous in our view of stipulation and evidence referred to hereinafter.

If the value of the goods was less than $100.00, a lesser penalty would be imposed under 18 U.S.C. § 659.

2. Mrs. Osten first testified as a witness for the government, and later testified in defense of Becker.

sales from the stolen shipment, is virtually incomprehensible. Clearly she equivocated in her testimony that bore upon Becker's scienter, especially with respect to the shipment from Standard, and as to when she typed the warehouse receipt for the stolen sets.

The government, to offset Mrs. Osten's testimony that she had typed a receipt for the TV sets dated September 12, 1969 (Exhibit 15), called as its witness Burns, a printer of warehouse receipt forms and expert on the subject. Burns testified that upon order from Becker he had twice printed forms for World Wide Warehouse, Inc.—once in 1968 and again in the fall of 1969. He also testified that the receipt form (Exhibit 15) typed by Mrs. Osten and dated September 12, 1969 could not have existed [3] on September 12, 1969, since it was from the second printing order, which had not been delivered to Becker's warehouse until October of 1969.

We think that the foregoing testimony was sufficient prima facie for an inference that Standard was a fictional company, that Becker did not receive the shipment of the TV sets in the regular course of business, and that he knew that the TV sets which he received and sold were stolen.

Becker's defense consisted of testimony of two customers that in their dealing with World Wide Warehouse, the merchandise they stored would be sold, with their consent, and that the net proceeds of the sales would be sent to them. Mrs. Osten testified in defense also. Her testimony was of the same vague and confusing character that marked her testimony for the government on direct and on cross-examination.[4] The jury was justified in believing beyond a reasonable doubt that Standard Distributing Company was fictional, was not in existence at the time Becker received the sets, and that Mrs. Osten was equivocating to protect Becker. The inference of Becker's scienter could reasonably follow. We conclude that there is no merit in Becker's contention that his guilty knowledge was not proven beyond a reasonable doubt.

■ We see no merit in Becker's contention that the testimony of Pearlstein, the buyer of Sears TV sets from Becker, was not connected to the stolen Sears shipment. Pearlstein testified that the sets he purchased from Becker on September 16 and 17 were new, and that he had never seen a new Sears TV set, or a Sears TV carton, at Becker's before. Moreover, he testified that the TV sets which he purchased were in the same type boxes as those shown in the stipulation. Clearly his testimony made the connection.

■ Next Becker claims that witness Burns was not qualified as an expert to testify that the incriminating warehouse receipt (Exhibit 15), supposedly typed by Mrs. Osten on September 12, 1969, had to be from the second printing of warehouse forms which were only delivered to Becker's warehouse in October, 1969.

The claim is frivolous. Burns had been in the business of printing warehouse forms for 24 years. His firm was official printer for two leading warehousemen associations in the country. His testimony showed that he was fully qualified to identify the pertinent receipt as he did.

3. Burns examined and compared Exhibit 15 (receipt dated September 12, 1969) with Exhibit 45 (receipt of the first printing order). He testified that Exhibit 15 could not have been from the first printing order since it failed to "align" completely with Exhibit 45.

4. The district court judge suspected the testimony of Mrs. Osten. He characterized her, as, inter alia, a "very equivocal witness with a convenient memory." At the trial he directed the district attorney to investigate her testimony. After this court remanded the case for the hearing of the new trial motion, Mrs. Osten was indicted for perjury in her testimony at the trial. She was found guilty on three counts at a bench trial after entering a plea of *nolo contendere*, and fined $1,000.00 on each count.

We have read the portions of the transcript relied upon by Becker in his contention that the trial judge, by interrogation of witnesses and comments to defense counsel, prejudiced the trial. We cannot agree that any prejudice to Becker was likely to result from the interrogation or comments or both.

Finally, we see no basis for reversal of the conviction because of any claimed errors in the conduct of the district attorney, or in the instructions to the jury, as to which there was no objection at the trial.

## PART II.

■ Becker based his motion for new trial on "newly discovered evidence" and supported the motion with his own affidavit as well as that of document expert Doud. Together the affidavits effectually claimed 1) that the "fabrication" of Exhibit 15 was a "crucial" issue at the trial; 2) that Becker was surprised and unable to meet the Burns testimony on that issue; 3) that after the trial Burns admitted he might have been mistaken whether Exhibit 15 came from the second printing of warehouse forms; that it was Doud's expert opinion that Exhibit 15 did not belong to the second printing; 4) that Becker had shown diligence in discovering the new evidence; and 5) that a new trial would most likely result in an acquittal of Becker. After a hearing, the judge who presided at the Becker trial denied the new trial motion and filed a written opinion.

The opinion recites the trial testimony of Burns that Exhibit 15 was from a second printing of forms. The opinion also notes the affidavit of Doud which tended to corroborate the statement of Burns that he may have mistaken as to when the warehouse receipt dated September 12 was printed.

The judge applied this court's decision in Larrison v. United States, 24 F. 2d 82, 87 (7th Cir. 1928), confirmed in United States v. Johnson, 149 F.2d 31, 44 (7th Cir. 1945),[5] in deciding that Becker's proffered "newly discovered" evidence plainly did not meet two requirements of the *Larrison* rule, *i. e.*, did not show that Becker was surprised by, and unable to meet, at the trial, the Burns testimony; and did not show that without that testimony the jury "might" have reached a different conclusion. The judge thought it unnecessary to consider the third requirement of *Larrison*, *i. e.*, whether the testimony of Burns was shown to be false.

It is conceded by Becker that the judge properly applied *Larrison*. He argues that the judge erred in concluding that Becker failed to meet two of the three Larrison requirements.

We find no merit in Becker's contention. His affidavit, proffered to show the element of surprise and inability to meet the Burns testimony, did not compel the district judge to decide either that Becker was surprised or unable to meet the testimony of Burns at the trial. The testimony of Mrs. Osten was material at the trial since she was the only witness who gave testimony which could have precluded a finding of scienter in Becker's possession of the stolen TV sets. Her testimony that the TV sets were received in the ordinary course of business was critical for Becker. The Burns testimony effactually overcame Mrs. Osten's testimony. Becker's attorney cross-examined Burns, but did not touch upon Burns' testimony with respect to identifying Exhibit 15. Despite argument in Becker's supplemental brief to the contrary, the record shows that Becker's attorney did not ask for a continuance for the purpose of meeting the testimony of Burns.

It is true that before cross-examining Burns the defense attorney stated that he needed "some time to study something here" and that he could not cross-examine without time to "study this." The court said the attorney could "look at them right now." The attorney said

---

5. See also United States v. Higgins, 412 F.2d 789, 790 (7th Cir. 1969).

"All right," and asked for the "exhibits." He then proceeded to cross-examine.

At the end of the testimony, the day before the court instructed the jury, the court inquired of Becker's attorney whether he had any defense witnesses other than the three who testified. The attorney made no mention of any witness to controvert the testimony of Burns. The judge at the new trial hearing could well have decided that the "newly discovered" evidence did not show diligence because Becker did not seek time to find an expert like Doud to give an opinion contrary to Burns'—as Doud does in his affidavit.[6]

Becker argues that it is "incomprehensible" how anyone could be anything but surprised at the Burns "false" testimony. This argument implies knowledge of falsity at the trial and is additional support for the judge's view that no showing is made of diligence in challenging effectively that "false" testimony.

The judge determined that another jury would come to the same conclusion at a second trial "regardless" of the truth or falsity of the Burns testimony. The record supports the finding of the judge that the evidence, putting aside Mrs. Osten's testimony, is "overwhelming" and that at the second trial Becker would be "deprived" of her testimony. We take "deprived" to mean that it was quite unlikely, in view of her conviction of perjury with respect to her testimony at the Becker trial, that she would be called, since, in the circumstances, her testimony would be of little effect in aid of Becker. Furthermore, Doud's affidavit does not "show[s] conclusively" that Exhibit 15 came from the first printing of warehouse receipt forms in 1968. His affidavit merely expresses his opinion, and Burns admittedly adheres to his contrary opinion. And the transcript of evidence of the Osten perjury proceedings shows the availability of government testimony to corroborate the Burns opinion.

 Finally, we see no merit in Becker's claim that his right to due process was violated by the government's knowing use of false testimony at the trial. We shall assume, but not decide, that the Burns testimony was mistaken. The claim nevertheless has no merit. The record is devoid of anything to show that the government had knowledge, before calling Burns to testify, that he would make the mistake he made in his testimony at the trial.

For the reasons given, we conclude that the district court judge did not abuse his discretion in denying Becker's motion for a new trial.

The judgment of conviction is affirmed.

---

6. We note also that Becker waited more than 15 months after the trial before filing his motion of "newly discovered" evidence.