## UNITED STATES of America, Plaintiff-Appellee,

v.

## Peter V. PAPPAS and Robert Craig, Defendants-Appellants.

### Nos. 78–2412, 78–2525.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1979.

Decided July 11, 1979.

Peter V. Pappas, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, U.S. Atty., Barry R. Elden, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

The denial by the district court of a new trial based on newly discovered evidence is affirmed by us.

## I

The defendants Craig and Peter V. Pappas and others were indicted in a scheme wherein persons associated with the ready-mix concrete industry bribed members of the Illinois General Assembly in order to obtain favorable legislation.[1] Both of them and others were charged in a 14 count indictment with conspiracy to commit mail fraud, 11 counts of substantive mail fraud, and 2 counts of Travel Act violations. They were both found guilty as charged and each was sentenced to a prison term and fine.

The convictions were affirmed by this court on appeal. *United States v. Craig*, 573 F.2d 455 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978). The defendants then filed a motion for a new trial, based on newly discovered evidence, under F.R.Crim.P. 33,[2] which was

---

1. Craig was one of the bribed legislators and Peter V. Pappas was the liaison employee of the Illinois Secretary of State. Peter V. Pappas was referred to by his full name in these proceedings in order to distinguish him from Pete Pappas (no relation) who was another legislator. Pete Pappas entered into an agreement with the government whereby in return for his cooperation and trial testimony, he was permitted to plead guilty to a lesser charge and placed on probation.

2. Rule 33 provides as follows:
   The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

denied by the district court on November 3, 1978. The defendants have appealed that ruling.

## II

■ The first alleged "new evidence" related to government exhibit 101–0, a tape recording of a September 27, 1973 conversation among Craig, Peter V. Pappas and Pete Pappas. The defendants obtained through the Freedom of Information Act several documents, including some postal inspector reports.

One report dated October 25, 1973, prepared by postal inspectors Kell and Greenan, referred to the tape recording of September 27. The defendants contended that the reference to that recording contains some material which does not appear on the recording admitted in evidence during their trial.

The Kell-Greenan report purports to summarize from different recordings and states thereafter (emphasis added):

The brief summaries above are from a *partial* playback of copies of the tapes, *and interview* of Pete Pappas.

At the trial of the defendants, Pete Pappas testified that when he listened to the September 27, 1973, recording two-and-one-half years later he "noted that some parts of the tape were unintelligible." 573 F.2d at 478. When he was interviewed by the postal inspectors within a month of a conversation, he was obviously able to supply the unintelligible portions, which accounts for the postal report containing some information not heard on the recording admitted in evidence.

Therefore the postal report does not impeach exhibit 101–0. Further the additional information supplied to the inspectors by Pete Pappas tends to be inculpatory and not exculpatory of the defendants. As the government pointed out, "Pete Pappas was exhaustively cross-examined at trial by several able and experienced attorneys." The defendants had full opportunity to develop

from him the portions of the tape which were unintelligible.

Thus this "new" evidence does not tend to show that another copy of the September 27 recording was in existence, or that there was any tampering with the tape, or that there was any violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

## III

The second area of "new" evidence consisted of the defendants learning that the other two government exhibits (102–0 and 103–0), consisting of tape recordings picked up by Pete Pappas while conversing with the defendants, were also monitored by radio transmitter, and so-called "back-up" tapes were made by government agents while the original tape attached to the body of Pete Pappas was recorded.

■ To warrant granting a motion for a new trial based on newly discovered evidence, it must be shown (1) that the evidence was discovered since the trial; (2) that the evidence could not have been discovered earlier with the exercise of due diligence; (3) that the evidence is not merely cumulative or impeaching; and (4) that the evidence is so material that it probably would produce a different verdict. *United States v. Ellison*, 557 F.2d 128, 133 n. 2 (7th Cir. 1977).

■ Prior to the trial the government filed a "Statement and Affidavit Regarding Electronic Surveillance," to which was attached a letter dated April 14, 1975 signed by the Chief Postal Inspector, which stated in part (emphasis added):

*Oral or telephone conversations* of the following defendants *were monitored and recorded* with the prior consent of one of the parties to the conversations . . . [listing Craig and Peter V. Pappas among others].

The primary meaning of "monitor" is "to check and sometimes to adjust (as a radio or television signal, channel, or program) for

quality or fidelity to a band by means of a receiver . . .." The secondary meaning is "to check (as a radio or telephone broadcast or a telephone conversation) for military, political, or criminal significance by means of a receiver." Webster's Third New International Dictionary (Unabridged, 1966). The use of a receiver requires the use of radio transmitters.

The defendants have argued that they were under the impression that no radio transmitters were used. They were told otherwise before trial by the Chief Postal Inspector's letter and their failure to pursue it indicates lack of diligence.

## IV

The defendants have argued that the trial record failed to establish a "chain of custody" of the taped recordings. The same argument was made and rejected by this court upon the direct appeal. At 573 F.2d at 478 we said:

> No chain of custody of the tapes was proven at trial. Notwithstanding this lack of proof, however, we feel that the tapes were admissible because a proper foundation had been demonstrated.

Next the defendants contended that the Internal Revenue Service logs now available to them show that copies of the tapes were made in 1974 for "possible processing" (101–0), "for processing" (102–0) and "for possible use by Marc Weis" (103–0) and that this indicates that the tapes delivered to Weis in 1976 were copies and not originals. Our opinion upon the direct appeal considered in detail the method of processing by Weis. It does not follow that if copies were made in 1974, the originals were not delivered to Weis in 1976. In addition, this argument was not made in the district court and was waived as to this appeal.

The defendants have argued that they have newly learned that James McBride, an employee of a readymix concrete company who was an unindicted conspirator and deceased at the time of trial, told postal inspectors on August 28, 1973 that Peter V. Pappas, who had earlier that day visited McBride, did not attempt to influence him or obstruct him from testifying. The fact that Peter V. Pappas did not try to influence McBride on August 28 is a negative fact and has no bearing on other evidence that he attempted to influence other people at other times.

Finally the defendants have argued that the government did not comply with the Attorney General's guidelines for the consensual recordings of conversations. Shortly after this court's opinion affirming the convictions on direct appeal, Craig and Peter V. Pappas moved in this court (which retained jurisdiction pending disposition of petitions for rehearing) to permit the district court to conduct a hearing on whether the guidelines were followed in this case. This court denied the motion. Having read the record and parties' briefs in this appeal, we conclude that the guidelines were substantially complied with in all respects.

The district court judgment denying a new trial is affirmed.

Affirmed.