NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0138n.06

No. 17-1756

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| BETTY LEE JENKINS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: KEITH, KETHLEDGE and THAPAR, Circuit Judges.

DAMON J. KEITH, Circuit Judge. Appellant Betty Lee Jenkins was convicted of one count of conspiracy to manufacture 100 or more marijuana plants, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(vii), and eleven counts of maintaining a drug-involved premise, in violation of 21 U.S.C. § 856(a)(1), (b), on January 12, 2015. Jenkins was subsequently sentenced to 126 months of incarceration on August 31, 2015.[1] On October 3, 2016, defense counsel filed a Motion for a New Trial on the basis of newly discovered evidence, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The district court denied the motion, finding that Jenkins failed to establish prongs two and four of the test established in *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982). Jenkins now appeals the district court's denial of the motion, alleging that a recorded statement captured on surveillance video during the execution of a search warrant in November 2013 constitutes newly discovered evidence, and thus, entitles her to a new trial under Fed. R. Crim. P. 33. In accordance with the district court's

---

[1] Jenkins was also sentenced to four years of supervised release as to count one and three years of supervised release as to counts two through twelve, to be served concurrently.

determination, we likewise find Jenkins's showing insufficient. For the reasons set forth below, we affirm the district court's denial of Jenkins's motion.

I.

Jenkins's convictions arose from her involvement in a conspiracy to construct marijuana "grow rooms" to cultivate large amounts of marijuana and sell said product for profit to customers throughout the states of Michigan, Ohio and Rhode Island. In addition to manufacturing the supply and maintaining the growing facilities, Jenkins and her boyfriend, fellow co-conspirator Phillip Walsh, recruited Dr. Gregory Kuldanek to fraudulently produce hundreds of physician certifications for Jenkins's customers to procure patient identification cards for medical marijuana, using the company name, BL Boop Enterprises.[2] In furtherance of the conspiratorial scheme, Jenkins and Walsh also recruited several individuals, including Jenkins's son and son-in-law, to grow, maintain, and sell the marijuana produced at various growth facilities.

a. *November 6, 2013 Search Warrant Execution*

On November 6, 2013, upon receipt of information regarding a suspected marijuana growth operation at the residence of one of Jenkins's recruits, Kathy Rosengren, agents of the Drug Enforcement Agency (DEA) and the Kent County Sheriff's Department (KANET), executed a search warrant for Rosengren's residence.

Based on the evidence discovered at Rosengren's apartment, agents secured and executed search warrants for Jenkins's residence and several other units located in apartment buildings owned by Jenkins. During the searches officers found evidence of active marijuana manufacturing operations on these premises and recovered more than 300 marijuana plants,

---

[2] Each patient card enabled Jenkins to claim, pursuant to the Michigan Medical Marihuana Act (MMMA), Mich. Comp. Laws Ann. § 333.26428, that more than twelve marijuana plants could be legally grown because of her customer's classification as "patients" or patients' "care givers" under the Act.

growth schedules, Michigan Medical Marihuana Act (MMMA) applications and paperwork, scales, and shipping boxes.

According to the testimony of Detective Nicholas Schwein, when officers arrived at Jenkins's residence to execute the search warrant, Jenkins was seated in a vehicle parked outside of the home. She was asked to step out of vehicle and was placed in handcuffs, and later escorted to the officers' van for questioning. Detective Schwein testified that Jenkins was read her *Miranda* rights, but did not sign the waiver card because her hands were handcuffed behind her back. At this point Jenkins asserts that she requested counsel. Detective Schwein testified that Jenkins made a comment asking whether a lawyer should be present. Interpreting the statement as a request for legal advice, Schwein declined to answer Jenkins and proceeded with his questioning. During the encounter, Jenkins made several inculpatory statements regarding her participation in and knowledge of the drug operations to the executing officers. Though detained throughout the search of her residence and the other apartments, Jenkins was released later that evening.

On April 22, 2014, a nine-count grand jury indictment was returned charging Jenkins, Walsh, and four co-conspirators with conspiracy to manufacture 100 or more marijuana plants and maintaining drug-involved premises. An arrest warrant was issued for Jenkins, and officers returned to the residence of Jenkins and Walsh on April 29, 2014. During the execution of the warrant, officers searched the property with the consent of the defendants and found more than 20 marijuana plants, over a kilogram of marijuana and edible food items containing marijuana.

At her arraignment on May 5, 2014, Jenkins pled not guilty to all nine counts of the original indictment and was released on bond.[3] Two weeks later, Jenkins's counsel filed a motion to suppress the evidence and statements obtained during the November 6, 2013 search, alleging violations of the Fourth and Fifth Amendments. A hearing on the motion to suppress was held on August 15, 2014.[4]

b. *Jenkins's Motion Hearing*

During the suppression hearing, Jenkins asserted that she was subjected to custodial interrogation prior to being advised of her *Miranda* rights. She further contended that law enforcement officers were unresponsive to her repeated requests for counsel. On November 6, 2014, the district court denied Jenkins's motion, crediting Detective Schwein's account of the interrogation, which was also corroborated by the testimony of other officers present during the warrant execution. Referencing Jenkins's testimony regarding the existence of video surveillance footage taken of the police encounter, the court stated that audio or video recordings that corroborated her testimony "would [have] be[en] a silver bullet, but no tape has been provided to the Court," and noted further that, "Jenkins seemingly did not attempt to get a copy of the tapes for the purposes of this motion."

Next, addressing Jenkins's contention that she requested an attorney prior to the officers' questioning, the court credited the police report recording Jenkins as stating "that she thought she should have a lawyer present before answering questions." The court, however, in application of the rule articulated in *Davis v. United States*, 512 U.S. 452, 459 (1994), determined that

---

[3] On June 26, 2014, a superseding indictment was returned adding three additional counts of maintaining drug-involved premises and four additional defendants. On October 30, 2014, the operative twelve-count second superseding indictment was returned.

[4] A subsequent hearing was held on all remaining issues related to Jenkins's motion to suppress on October 9, 2014.

Jenkins's statement was interrogatory and did not constitute an "unambiguous and unequivocal request" for counsel.[5]

Following the court's denial of the suppression motion, Jenkins and Walsh declined plea offers and proceeded to trial.[6] After a six-day jury trial, Jenkins and Walsh were found guilty on all twelve counts. Jenkins and Walsh appealed.

### c. *Jenkins's Appeal of her Judgment*

On direct appeal, Jenkins challenged the district court's denial of her motion to suppress. *See United States v. Walsh*, 654 F. App'x 689, 701-04 (6th Cir. 2016). The court affirmed the judgment, declining to find clear error in the district court's credibility determination.[7] *Id.* at 703.

### d. *Jenkins's Motion for a New Trial*

On October 3, 2016, Jenkins filed a motion for a new trial on the basis of newly discovered evidence. The newly discovered evidence at issue is "a surveillance video of a search of [Jenkins's] home," containing the audio and video recording of Jenkins's statement, "I want my rights," which she claims encompasses her request for counsel prior to custodial interrogation. The district court, applying the test for newly discovered evidence outlined in *Barlow*, denied Jenkins's motion, finding that she failed to establish the second and fourth factors of the *Barlow* analysis. Specifically, the court determined that Jenkins and her trial counsel, having prior knowledge of the existence of surveillance recording prior to trial, failed to

---

[5] The district court also concluded that Jenkins's waiver of her *Miranda* rights was voluntary and that her detention was lawful, given that evidence discovered by police during the execution of the search warrant because the growth of "a single marijuana plant . . . is a federal offense."

[6] Jenkins's co-conspirators, Kuldanek, Rosengren, Parker, Smith, Cynthia Wessel, Adam Rumpf, and Steven Hawkins pled guilty and entered into plea agreements with the government. Co-conspirator Todd Greene also proceeded to trial; however, charges against him were dropped in exchange for his cooperation with the government.

[7] The Court also upheld the district court's denial as it pertained to evidence seized during the November 6 search. *See Walsh*, 652 F. App'x at 703.

exercise due diligence in discovering the recording of her rights-invoking statement. Additionally, the court found that given the amount of other inculpatory evidence offered by the government against Jenkins, even if a new trial were conducted, "the idea that the video evidence would likely produce an acquittal if the case were retried is a fantasy." Jenkins's appeal of the district court's denial of her motion for a new trial is now before this panel for review.

## II.

This court reviews a district court's denial of a motion for a new trial under an abuse of discretion standard, reversing the district court's decision only when it relies on "clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Lewis*, 521 F. App'x 530, 531 (6th Cir. 2013) (internal citation omitted).

Rule 33 of the Federal Rules of Criminal Procedure provides, in pertinent part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). To demonstrate that a new trial is warranted on the basis of newly discovered evidence, a defendant must prove: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce acquittal. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991) (citing *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986)); *see also Barlow*, 693 F.2d at 966. The burden of proof rests with the defendant. *See United States v. McLain*, 9 F. App'x 463, 464 (6th Cir. 2001).

## III.

Jenkins asserts that the district court abused its discretion in finding that she failed to satisfy the second and fourth prongs of the *Barlow* standard. In accordance with the trial court's

decision, we also find Jenkins's showing insufficient to satisfy the *Barlow* factors, and affirm the district court's decision. Failure to meet any of the four elements is sufficient cause to end the court's inquiry, *see United States v. Braggs*, 23 F.3d 1047, 1050 (6th Cir. 1994), however, because the district court made findings as to each element, we will address each in turn.

a. *Prong One: Evidence Discovered After Trial*

The district court, in its denial of Jenkins's motion for a new trial, focused primarily on the second and fourth factors of the analysis, "assum[ing]" that the first prong of the analysis— the evidence was discovered only after trial—was satisfied. After its determination that Jenkins failed to meet prongs two and four, the district court was under no obligation to analyze the other two elements of the test. On review, however, it appears clearly that here at the application of the first *Barlow* factor, the rights-invoking statement uttered by Jenkins does not constitute new evidence discovered after trial under this circuit's precedent.

The Sixth Circuit, interpreting the first *Barlow* factor, defines newly discovered evidence as "evidence not known by the defendant at the time of trial." *Seago*, 930 F.2d at 488; *see United States v. Turns*, 198 F.3d 584, 587 (6th Cir. 2000); *United States v. Sims*, 72 F. App'x 249, 252 (6th Cir. 2003) ("Our cases firmly establish that if a defendant is aware of the evidence at the time of trial, then it is not newly discovered evidence under Rule 33."); *see also Stephens v. Kemp*, 469 U.S. 1043, 1051 (1984) (Brennan, J., dissenting from the denial of certiorari) ("Newly discovered evidence has a well-settled meaning: it is evidence which could not reasonably have been presented by the petitioner in the earlier proceeding.") (internal quotations and citations omitted).

Here, the "newly discovered" evidence offered by Jenkins is "a video and audio recording made of the search at the defendant's home on November 6, 2013." Contained in this

audio and video recording is footage from multiple surveillance cameras located inside and outside of Jenkins's home. Jenkins asserts that prior to entering her home officers approached her in the driveway of her residence, asked her to exit her vehicle and placed her in handcuffs. Footage captured from the two outdoor cameras shortly thereafter depicts Jenkins yelling "I want my rights" as officers attempt to enter her home. The interior camera recording depicts an officer, later self-identified as Officer Merryweather, pointing out the location of the surveillance system in the home and shutting the interior camera off. No footage was recovered from the interior camera after it was turned off by Officer Merryweather within approximately ten minutes of entering the residence. After a nine-month restoration process initiated by appellate counsel, Jenkins obtained the audio recordings from the surveillance system and argues that the recorded statements satisfy the requirements for newly discovered evidence under Rule 33.

Under this court's interpretation of the term "newly discovered," the proffered evidence could not constitute newly discovered evidence because Jenkins had knowledge of the potential existence of this evidence prior to trial.

The record clearly demonstrates Jenkins's knowledge of the presence of a functioning surveillance system, consisting of cameras in the interior and exterior of her home. These facts are corroborated by Jenkins's testimony during the suppression hearing.

> **Q**: Now, there's been-- They answered questions about a surveillance system in your home, and do you have-- did you have such a system in November?
> **Jenkins**: Yes, I did.
> **Q**: How many cameras were operational?
> **Jenkins**: I believe there is [sic] eight.
> **Q**: And do they have the ability to capture audio?
> **Jenkins**: Yes.
> **Q**: And where you were when you mentioned that you wanted to be interviewed there, was that within a camera range?
> **Jenkins**: Yes.

In addition to Jenkins's belief that the surveillance system was "on" and recording during her interview with officers on November 6, she had knowledge of the statements she uttered during the exchange.

We have previously held that prior knowledge of potentially exculpatory evidence forecloses on the defendant's ability to present the evidence as "new" after trial. In *United States v. Glover*, 21 F.3d 133, 138-39 (6th Cir. 1994), the court held that a defendant who knew of a witness's potentially exculpatory testimony before trial could not later submit the testimony as "newly discovered" evidence because the defendant was "well aware" of its existence prior to trial. *See also United States v. Gaitan-Acevedo*, 148 F.3d 577, 589 (6th Cir. 1998); *United States v. Pierce*, 62 F.3d 818, 824 (6th Cir. 1995); *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992).

Here, upon consideration of whether the defendant possessed prior knowledge, the conclusion is clear. Jenkins, as the speaker of any exculpatory statement now offered as "newly discovered" evidence, was "well aware" of this evidence prior to trial. Jenkins's argument that the statements only became known after the restoration process is unavailing, because even without specific knowledge of the recording's content, Jenkins knew that she made a verbal request for counsel within range of the surveillance cameras located around her home. As this court determined in *Glover*, a finding that evidence is now "newly available" does not equate to a finding that the defendant did not have knowledge of the evidence before trial. *See also Turns*, 198 F.3d at 587 ("The key to deciding whether evidence is newly discovered or only newly available is to ascertain when the defendant found out about the information at issue."); *Pierce*, 62 F.3d at 825 ("Evidence is not newly discovered when it is necessarily known by the defendant at the time of trial.") (internal citations and quotations omitted).

In addition to Jenkins's knowledge that her statements were potentially captured on her home surveillance system, the record also supports the finding that her attorney had knowledge of the potential exculpatory evidence prior to trial as well.

> **Q**: And your client had told you that that system was up and running on her house on the day she was arrested in November? I'm not saying she told you in November, but at some point, she told you that the system was on?
>
> **[Trial Counsel]**: Right. We would not have discussed it, I don't think, in November of 2013, but I'm pretty sure that on my May 7, 2014, interview of her we talked about it. And I'm also fairly positive that I talked to her about it in the few days between me receiving the discovery disk from your office and finalizing the motion on May 27. It was only a four or five day period, but I think-- I do recall, because I had to make a decision at that point about what role would it play?
>
> . . .
>
> **Q**: When-- You clearly knew before she testified on August 15th, 2014, that the system existed and it was capable of recording inside of the home, because you questioned her about that?
>
> **[Trial Counsel]**: Yes.
>
> **Q**: And she said that it was capable of it, and she would [sic] hoped that it would have recorded her in the kitchen. Do you recall that?
>
> **[Trial Counsel]**: Yes. . . . We had made-- We had conversations-- We, being me and Miss Jenkins, about what else might be on the recording, other things that we didn't care for the government to see. And because I had the statement in Detective Schwein's report, I didn't think I needed it for the motion.
>
> . . .
>
> **Q**: On August 15, 2014, when she disclosed that the system was in her-- was operated in her house and potentially outside of the house, do you recall being asked if she was willing to provide the password so the government could look at the tape?
>
> **[Trial Counsel]**: Yes.

Jenkins disputes whether trial counsel had knowledge of what was specifically recorded on the surveillance device or if the statement "I want my rights" was captured because it was made outside of the home. But whether counsel had knowledge of the evidence, while perhaps probative, is not the standard. The test enquires whether the *defendant* had knowledge of the evidence prior to trial, and here, Jenkins, as the speaker of the statements and owner of the home,

was aware that her own exculpatory statements were made within the vicinity of functioning exterior surveillance cameras located outside her home.

Although the district court did not reach the merits of the first prong, we find that it too proves fatal for Jenkins's motion.

b. *Prong Two: Due Diligence*

As the district court stated in its decision, this element was all but conceded by Jenkins's trial counsel. Trial counsel testified during the motion hearing that despite his knowledge of potential surveillance footage capturing his client's interaction with officers on November 6, he never attempted to recover the evidence any time before trial. Whether trial counsel's decision not to seek the video footage from the government after its seizure was a strategic tactic, as the district court gleans from the record, or an unfortunate oversight, trial counsel's effort was far from diligent. Equipped with the knowledge that Jenkins repeatedly requested her rights prior to entering her home and the knowledge that a functioning exterior surveillance system had the capability of capturing audio and visual footage of Jenkins's residence, the minimal effort exerted by trial counsel falls short of the requirements for due diligence. Appellate counsel's belated effort to restore the surveillance video, making the recordings available for consideration in connection with the instant motion, exemplifies the requisite diligence that should have been exercised from the start of discovery. This is the case particularly after the trial court indicated to trial counsel during the suppression hearing that the tapes might bear some significance in corroborating Jenkins's account of the November 6 search. Other courts have similarly determined that a defendant with knowledge of the use of a recording device, regardless of whether the specific content of the recording is known, fails to exercise the requisite diligence if they do not pursue the recordings prior to trial. *See United States v. Pappas*, 602 F.2d 131, 134

(7th Cir. 1979). In the absence of any attempt, by Jenkins or her trial counsel, to recover the recorded statement now offered as newly discovered evidence prior to trial, we conclude that the district court's finding as to prong two was not an abuse of discretion.

c. *Prong Three: Material and Not Merely Cumulative or Impeaching*

The new evidence offered by appellant— the statement "I want my rights"— is a classic example of impeachment evidence. The statement is wholly unrelated to the elements of the offenses underlying Jenkins's conviction. The only probative value of the new evidence would be to impeach the testimony of Detective Schwein and corroborate Jenkins's own account of the November 6 search. While immaterial to the elements of the underlying offenses, there is some material value to the statement as it pertains to Jenkins's constitutional claims for failure to advise her of her right to counsel. As the district court noted, the decision regarding Jenkins's suppression motion rested entirely on a credibility determination of Jenkins, Detective Schwein and the other officers present at the time the search warrant was executed on Jenkins's home. Thus, we find no abuse of discretion in the district court's analysis of prong three, assuming materiality solely as it pertained to Jenkins's constitutional claims.

d. *Prong Four: Evidence Would Have Likely Produced an Acquittal if Retried*

The district court highlights ample additional evidence supporting Jenkins's convictions, to include the physical evidence of active marijuana manufacturing operations discovered during the search of Jenkins's residence on November 6 and April 29, as well as the testimony of her co-conspirators, identifying her as an orchestrator of the conspiratorial scheme. Jenkins asserts that the majority of the other physical evidence relied on by the court to sustain her convictions would have also been suppressed as "fruits of the poisonous tree." However, as the government notes, the officers had authority to search Jenkins's residence through a valid search warrant

obtained on November 6 and subsequently, with the consent of Jenkins, during the execution of the arrest warrant. These independent grounds thus negate any "poisonous" effect the earlier constitutional violation would have caused. *See United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) ("[E]vidence will be admitted if the government shows that it was discovered through sources 'wholly independent of any constitutional violation.'"). In light of the testimony and other physical evidence, unrelated to Jenkins's admissions, which support Jenkins's convictions, the district court did not abuse its discretion in finding that on retrial, had the surveillance recording been admitted and Jenkins's admissions suppressed, the case would not have resulted in an acquittal.

## IV.

Accordingly, the district court's denial of Jenkins's motion for a new trial was not an abuse of discretion. We affirm.