UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark W. FRUTH, Defendant–Appellant.

No. 93–3690.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1994.

Decided Sept. 23, 1994.

John W. Vaudreuil, Asst. U.S. Atty., Timothy O'Shea (argued), Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

* The Honorable Marvin E. Aspen, District Judge of the Northern District of Illinois, sitting by designation.

Charles W. Giesen, Morris D. Berman (argued), Madison, WI, for defendant-appellant.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and ASPEN, District Judge.*

ASPEN, District Judge.

Following a jury trial, Mark Fruth was convicted of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1). Prior to Fruth's sentencing, the government disclosed that it had obtained information after the trial which suggested that a government witness had testified falsely. On the basis of this revelation, Fruth filed motions for a new trial and to disclose the identity of the DEA informant who had provided the government with the impeaching information. The district court denied both motions, and Fruth now appeals that ruling, and challenges comments made by the district court during the defense's closing argument.

## I. BACKGROUND

The defendant, Mark Fruth, was indicted on March 11, 1993, for conspiracy to possess cocaine with intent to distribute. At trial, the government offered the testimony of Jan Cramer, Fruth's alleged co-conspirator. According to Cramer, Fruth had approached him looking to purchase a kilogram of cocaine, and asked if Cramer knew anyone who could supply that quantity. Cramer testified that he spoke to his nephew, who in turn set up a meeting with a source to arrange the deal. Cramer then met with Fruth at Cramer's house, and Fruth gave Cramer the money ($23,000 in cash) for the purchase. Cramer returned to the source, who was actually an informant working with government agents, and was arrested. At the time of his arrest, Cramer informed the police that the person who had provided the money did not know that it was going to be used for drugs. When he began cooperating with the government, however, Cramer informed the DEA that Fruth had given him the money for the purpose of purchasing cocaine.[1]

1. Cramer's testimony was supported by that of his girlfriend, Jaimi Bartholomew, who was waiting with Fruth after Fruth gave Cramer the money. According to Bartholomew, Fruth stated

Fruth, on the other hand, testified that he did not know the money would be used in a drug deal. He claimed that he and Cramer had discussed starting a small building maintenance and custodial business. They concluded that it would take about $30,000 to get started, and Fruth agreed to contribute $23,-000 out of the proceeds of a life insurance policy of which he was the beneficiary.[2] Fruth testified that he gave the money in cash to Cramer, who was then to purchase a specially equipped van for the new business. However, Fruth, who has a college business degree, acknowledged that they never drew up a written business agreement or took any formal steps to set up the business, and that he did not know where Cramer was going to purchase the van.

The defense also attempted to impeach Cramer's testimony through evidence of his prior involvement in dealing cocaine.[3] Indeed, Cramer himself admitted that he had regularly dealt small amounts of cocaine for the previous seven years. However, Cramer expressly denied that he had ever dealt in kilogram quantities before.

During closing argument, the district court twice interrupted Fruth's attorney. The first time came when the attorney attempted to define reasonable doubt:

> [T]his is a criminal case, and ... the burden of proof is beyond a reasonable doubt. In other words, if the scales are tilted, however greatly, if you still have a reasonable doubt about any aspect of the government's case, then your responsibility under your oath as jurors is to find Mark Fruth not guilty.

The court sua sponte interrupted the attorney, stating "that's not exactly true," and asking the attorney to "stay away from trying to define it." The court added that the statement was "true as it relates to any element of the case that the government has to prove."[4] Later, near the end of the defense counsel's argument, the attorney stated that "you will have reason to doubt. If you do have a reason to doubt...." At this point, the court interrupted and stated, "No. You have a reasonable doubt." The jury ultimately returned a guilty verdict.

After the verdict, but before sentencing, the government interviewed a confidential informant in an unrelated case. The informant, who had not been known to the government at the time of Fruth's trial, stated that someone named "Jan" (whom the agent believed to be Cramer) had purchased a kilogram of cocaine from him a few months before the deal at issue in the Fruth prosecution. Although the informant knew nothing of the deal involving Fruth, the information about the informant's deal with Cramer directly refutes Cramer's claim that he had never dealt in kilogram quantities before. Based upon this information, Fruth moved for a new trial. The district court denied Fruth's motion, and this appeal followed.

## II. DISCUSSION

### A. Cramer's Testimony and the "Newly Discovered Evidence"

■■■ Fruth moved for a new trial based upon the informant's statement that Cramer had been involved in a kilogram deal prior to

---

that "[Cramer] was going to get the kilo for him" and that "[Fruth] did not have all the money for the kilo and that [Cramer and another co-conspirator] probably had to stop somewhere to break it up." Bartholomew testified that she understood Fruth to be referring to a kilogram of cocaine.

**2.** The proceeds from the policy totalled $25,000.

**3.** Prior to trial, the parties had appeared at a pretrial conference before the magistrate judge, at which the defense gave notice of its intent to offer evidence of Cramer's extensive involvement in cocaine distribution over the previous ten years. In addition, Fruth's attorney stated that he had a witness "willing to testify that Cramer

has distributed large quantities ('bricks') of cocaine within the past year." The magistrate judge, however, recommended that the Court disallow extrinsic evidence to prove up prior drug dealing by Cramer, stating that "[p]roving up actual cocaine sales seems to fall more clearly within the prohibition of Rule 608(b) than within the realm of ... Rule 404(b)." The district court did not ultimately have to rule on this question, since the defense did not offer any of the proffered extrinsic evidence at trial.

**4.** Both the magistrate judge and the district judge had earlier refused to include any instruction on reasonable doubt, noting the Seventh Circuit's clear law to the contrary.

the Fruth deal, contrary to Cramer's sworn testimony. We review the district court's denial of Fruth's new trial motion for an abuse of discretion. *See United States v. Reed*, 2 F.3d 1441, 1451 (7th Cir.1993). This court has articulated two tests to determine whether a new trial is warranted based on newly discovered evidence. Under the "general test,"

> [t]he defendant must show that the evidence (1) came to [his] knowledge only after trial; (2) could not have been discovered sooner and [he] exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.

*United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir.1984) (quoting *United States v. Oliver*, 683 F.2d 224, 228 (7th Cir.1982)). However, when faced with a claim that a witness testified falsely, the district court is to employ the more lenient test most recently set forth in *United States v. Reed*, 2 F.3d 1441 (7th Cir.1993). Under *Reed*, a new trial should be granted when:

> (a) The court is reasonably well satisfied that the testimony given by a material witness is false.
>
> (b) The jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false.
>
> (c) The party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Id.*, 2 F.3d at 1451 (quoting *United States v. Reed*, 986 F.2d 191, 192–93 (7th Cir.1993) (quoting *United States v. Mazzanti*, 925 F.2d 1026, 1029 (7th Cir.1991))). Under either test, "mere speculation or conjecture is insufficient to warrant a new trial." *Reed*, 2 F.3d at 1451 (citations omitted).

■ Although both Fruth and the government cited the *Reed* test in their briefs before the district court, and based their arguments upon it, the district court relied upon the "general" test in denying the new trial, without even referring to *Reed* or its predecessors. On appeal, Fruth once again turns his focus to *Reed*, and the government again follows suit. It is not clear, however, that *Reed* applies in this circumstance. As noted above, a threshold requirement for applying the "false testimony" test is a determination that the testimony was, in all likelihood, false. Because the district court utilized the *Nero* test, it did not make an express finding on this issue. However, it is entirely likely that the district court used the *Nero* test *because* it was not "reasonably well satisfied" that Cramer's testimony was, in fact, false. The informant told Jerome Becka, an agent with the Drug Enforcement Administration, that he had sold a kilogram of cocaine on one occasion to "Jan," whom the agent believed to be Cramer, and had been again approached by "Jan" a short time before Cramer was arrested. However, in the same affidavit in which Becka relates this conversation, he also notes that he told Cramer of the informant's statements. Cramer again denied ever making a kilogram purchase. And although he acknowledged that he knew the informant and had previously purchased cocaine from the informant, Cramer reiterated that he had never purchased quantities larger than an ounce. Faced with the competing claims of two government informants, the district court may have been unable to conclude that Cramer's testimony in Fruth's trial was likely false, and thus turned to the general test regarding newly discovered evidence.[5]

■ Based upon this test, the district court did not abuse its discretion in denying Fruth's motion for a new trial. Under the third prong of *Nero*, the evidence must be material, "and not merely impeaching or cumulative." *Nero*, 733 F.2d at 1202. The evidence Fruth proffers is clearly the latter rather than the former. The informant, assuming he were allowed to testify,[6] would

---

5. Indeed, this conclusion is supported by the district court's statement that the new evidence was "merely impeaching."

6. The district court concluded that the informant's testimony would be barred by Fed.R.Evid. 608, a conclusion strenuously disputed by Fruth. We need not reach this issue because, as discussed above, the informant's testimony, even if

merely contradict Cramer's claim that he had never dealt in kilogram quantities before. Such testimony would serve only to impeach Cramer's credibility, rather than shed light on a material issue in the case; as a result, this evidence would be essentially cumulative, since Cramer's credibility was attacked throughout the course of the trial, as discussed further below. As a result, it is clear that, under the *Nero* test, Fruth was not entitled to a new trial based upon this evidence.

■ However, even if we assume that Cramer's testimony was likely false (an assumption Fruth would apparently have us make), and thus apply the *Reed* test, Fruth would not be entitled to a new trial. Indeed, Fruth can satisfy neither of the remaining two prongs of the "false testimony" inquiry.

### 1. "Jury Might Have Reached a Different Conclusion"

Fruth argues that evidence that Cramer had engaged in a kilogram level transaction prior to the one involved in the present case would have "struck at the heart of Cramer's artfully deceptive portrayal of himself" as a small-time dealer. From this he concludes that Cramer's credibility with the jury would have been so compromised that the jury might have instead believed Fruth's version of events. Fruth's assertion, however, is simply untenable. First, during the government's examination of Cramer, the jury learned that Cramer had dealt in cocaine for approximately seven years. Cramer also admitted on direct that he initially lied to the police about where he had obtained the money to purchase the cocaine at issue in the trial. Based solely upon the direct examina-

admissible, would not entitle Fruth to a new trial.

7. Indeed, it is this fact which supports the government's argument that the informant's testimony would not be admissible. As the district court noted, Fed.R.Evid. 608 bars the introduction of extrinsic evidence of a collateral matter to impeach a witness. But even if the evidence were admissible under Fed.R.Evid. 404(b), which admits evidence for such purposes as proof of plan, motive, or bias, Fruth must still overcome the hurdle of Fed.R.Evid. 403, which allows evidence to be excluded, *inter alia*, if it would confuse the issues, mislead the jury, or constitute

tion, the jury was aware both that Cramer had an extensive history dealing drugs and that he had initially lied about Fruth's involvement in the scheme, and only fingered Fruth after beginning his cooperation with the authorities.

In addition, Fruth attacked Cramer's testimony at every point throughout the trial, repeatedly characterizing him as a long-term cocaine dealer and a liar. Specifically, Fruth's counsel referred to Cramer as a "drug dealer for years and years, [who] was street-smart and a con," and "an admitted confessed cocaine dealer [who] has been dealing cocaine for several years." The defendant's counsel also questioned Cramer about his drug activities on cross-examination, and ultimately told the jury that Cramer is "extremely crude, street-wise, smart, cunning; and as he admitted, will say what he thinks needs to be said to suit his purposes." Fruth's counsel also characterized Cramer's testimony as "bought and paid for by the government." In sum, the new evidence would have added little to the jury's understanding of Cramer; they knew he had previously dealt in cocaine, and they knew that he had initially lied to the police about Fruth's involvement. All they would have learned is that, on one occasion, he purchased a larger amount of cocaine than he had admitted at trial. This minimally significant impeachment evidence is therefore largely cumulative, and by itself only nominally adds to Fruth's substantial efforts to impeach Cramer.[7] Accordingly, it is highly unlikely that the informant's revelation would have altered the jury's verdict. *See United States v. Rainone*, 32 F.3d 1203, 1207 (7th Cir.1994).[8]

"needless presentation of cumulative evidence." As above, we need not resolve the admissibility issue, because even if admissible, the informant's testimony would likely not have altered the jury's ultimate conclusion.

8. Of course, if the government at the time of trial had knowledge of or suborned the perjury, or some other aggravating factor were present, the wronged defendant would have a much stronger case for a new trial under the principles enunciated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. *See United States v. Jackson*, 780 F.2d 1305, 1311

## 2. Defendant Unaware of Falsity

Fruth also maintains that he did not know about the informant's evidence before trial, and therefore argues that the third prong of the test weighs in his favor. In support, he points to the district court's conclusion that, pursuant to the *Nero* test, the evidence was "new in fact and could not have been discovered sooner in the exercise of due diligence." This is certainly correct; neither Fruth nor the government had, or reasonably could have, obtained the informant's testimony any earlier. Knowledge of the evidence (i.e., the informant's testimony), however, is not the focus under the third prong of the *Reed* test. Instead, to warrant a new trial under *Reed*, the movant must demonstrate that he was "taken by surprise when the false testimony was given" or "did not know of its falsity until after the trial." *Reed*, 2 F.3d at 1451 (internal quotations and citations omitted). That is, the focus in the *Reed* test is not on the newly discovered evidence, but on the false testimony itself. Given this focus, it is clear that Fruth's claim must fail. At the final pretrial conference, Fruth's counsel stated that he had a witness willing to testify that Cramer had distributed large quantities, or "bricks," of cocaine within the previous year. Accordingly, by Fruth's attorney's own admission, Fruth was aware of the falsity of Cramer's testimony at the time it was made, and simply failed to pursue it at trial. Whatever Fruth's motivations in not contesting Cramer's testimony at the time it was offered, he cannot now claim it as a basis for a new trial.[9]

## B. District Court's Sua Sponte Comments

Fruth maintains that the district court's interruptions during his attorney's closing argument was improper. On the first occasion, the court interrupted defense counsel as he was characterizing the government's burden in the case, and particularly the meaning of the "reasonable doubt" standard. We initially observe that, prior to trial, the court twice indicated to defense counsel that this court has clearly stated that the jury should be given no instruction as to the meaning of "reasonable doubt." *See United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). Thus, despite the two pretrial rulings, Fruth's attorney pressed on and attempted to define reasonable doubt. Fruth also asserts that the district court's interruption was unfairly prejudicial, because the district court stated that defense counsel's assertion regarding reasonable doubt and the government's burden was "not exactly true." Whatever incidental effect this might have had on the jury's perception of Fruth or his attorney was eliminated immediately thereafter, when the court added, "It's true as it relates to any element of the case the government has to prove." Given this set of facts, we simply cannot conclude that the district court abused its discretion. *See, e.g., United States v. Mitan*, 966 F.2d 1165, 1174–75 (7th Cir.1992) (finding no error where district court attempted to "curb" defense counsel's improper statements and behavior). With respect to the second interruption, the court merely corrected the attorney's misstatement, "reason to doubt," with the proper "reasonable doubt." Fruth's claim of prejudice as a result of this correction is meritless. In sum, there is no basis for a new trial as a result of the court's comments during Fruth's closing arguments.

## III. CONCLUSION

For the reasons set forth above, the conviction of Fruth is

AFFIRMED.

---

n. 4 (7th Cir.1986). In the present case, however, no such aggravating factors are present.

**9.** Because Fruth was not entitled to a new trial, there was no basis for disclosure of the informant's identity, and the district court correctly denied Fruth's motion to disclose.