129 F.3d 119
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
James BRENNAN, Defendant-Appellant.
 No. 96-1603.
 United States Court of Appeals, Seventh Circuit.
 Argued May 15, 1997.
Decided Oct. 17, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Dec. 19, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.
 Before Hon. RICHARD D. CUDAHY, Hon. DANIEL A. MANION, and Hon. ILANA DIAMOND ROVNER, No. 96-3680, CJJ.
 ORDER
 PAUL E. PLUNKETT, Judge.
 
 
 1
 James Brennan appeals from the denial of his motion for a new trial under Fed.R.Crim.P. 33. We previously affirmed Brennan's conviction and sentence on narcotics conspiracy and telephone facilitation charges in United States v. Kozinski, 16 F.3d 795 (7th Cir.1994), but he now contends that a new trial is warranted due to facts that have since come to light about David Avery, a cooperating witness who testified on the government's behalf at Brennan's trial. The district court concluded that the evidence proffered by Brennan did not require a new trial, nor did the court find Brennan's evidence sufficient to require an evidentiary hearing. Brennan challenges those He also asked the district court to conduct an evidentiary hearing on his motion. The newly discovered evidence proffered by Brennan is alleged to support the following claims: (1) that the government suppressed exculpatory evidence prior to trial in violation of its responsibilities under Brady v. Maryland, 373 U.S. 83 (1963); and (2) that the government employed perjured testimony at Brennan's trial from witness William Littlejohn. Brennan contends that the evidence presented in connection with the Brady claim establishes that Avery used and sold narcotics while incarcerated at Chicago's Metropolitan Correctional Center ("MCC"), that Avery had sexual encounters both at the Dirksen Federal Building and the MCC, and that he received undisclosed payments from the government while incarcerated.
 
 
 2
 The evidence relating to Avery's alleged involvement with drugs came solely from the affidavit of Tommy Dye. That affidavit indicates that Dye was incarcerated with Avery on the sixth floor of the MCC for approximately eighteen months. Dye states that during that time, Avery told him that he obtained drugs during conjugal visits at the Dirksen Federal Building. Dye also purports to have seen Avery snorting cocaine on several occasions, and he further states that Avery sold cocaine to other inmates, including four inmates who were cooperating witnesses in the notorious El Rukn prosecutions in the Northern District of Illinois. See, e.g., United States v. Boyd, 55 F.3d 239 (7th Cir.1995).
 
 
 3
 Dye also was one of the sources from which Brennan learned of Avery's alleged sexual encounters while he was incarcerated. As we mentioned above, Dye states in his affidavit that Avery told him that he was allowed conjugal visits at the Dirksen Federal Building during which he obtained narcotics. Additional evidence in that regard came from John Eierman, a private investigator hired by Brennan's family. Eierman states in an affidavit that during a three-hour interview with Michael Corbitt, a former police officer who had been housed with Avery on the sixth floor of the MCC while awaiting disposition of racketeering charges, Corbitt told Eierman that he once observed Avery and a woman having sex. No further details of the incident are provided, however. Eierman's report of a May 1995 interview with William Littlejohn, meanwhile, indicates that Avery had told Littlejohn that an MCC guard was going to allow Avery to have sex with a woman in his cell. Finally, Harry James Martin, who spent time at the MCC as part of a lengthy sentence on an armed robbery conviction, told FBI agents in a December 1992 interview that the only information he had of any sexual activity at the MCC involved Avery and another inmate, Nick Ahrens, who allegedly were permitted by an MCC guard to have sex with a female inmate in a cell. It is not clear from the FBI report whether Martin witnessed this incident or only heard of it. The government submitted evidence, however, which established that Ahrens had been transferred out of the MCC on December 5, 1990, and that Martin did not take up residence there until February 1991. The government showed, then, that Martin did not have personal knowledge of the alleged sexual encounter. materials submitted in support of that motion "strongly suggest that [Brennan] is merely attempting to benefit from the circumstances surrounding the El Rukn cooperating witnesses because Avery was housed on the sixth floor of the MCC at the same time." (R. 1136 at 17.) The court found, however, that Brennan had been unsuccessful in his attempt to link the improprieties involving the El Rukn cooperating witnesses to Avery. The court therefore concluded that Brennan's "newly discovered evidence" did not entitle him to a new trial.
 
 II.
 
 4
 Our review of the district court's denial of Brennan's Rule 33 motion is deferential. We consider only whether the district court abused its discretion in finding that a new trial was not warranted under the rule. United States v. Gonzalez, 93 F.3d 311, 315 (7th Cir.1996); United States v. Williams, 81 F.3d 1434, 1437 (7th Cir.1996). As we observed in Gonzalez, such motions must be approached " 'with great caution,' " as we " 'are wary of second-guessing the determinations of both judge and jury.' " Gonzalez, 93 F.3d at 315 (quoting United States v. DePriest, 6 F.3d 1201, 1216 (7th Cir.1993)). We also assess the denial of an evidentiary hearing on such a motion deferentially, asking whether the district court abused its discretion by denying the motion without a hearing. United States v. Walker, 25 F.3d 540, 548 (7th Cir.), cert. denied, 513 U.S. 953, 1009 (1994); United States v. Hedman, 655 F.2d 813, 814 (7th Cir.1981).
 
 
 5
 When a defendant relies on newly discovered evidence to support his motion for a new trial, we have required him to show that the evidence on which he relies "(1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial." Gonzalez, 93 F.3d at 315; see also United States v. Kamel, 965 F.2d 484, 490 (7th Cir.1992). The test is slightly less stringent when the motion is based on the allegation that the government employed perjured testimony to secure the defendant's conviction. In that circumstance, the defendant must show: (1) that the testimony given by a material witness was false; (2) that the jury may have come to a different conclusion without that testimony or if it had known the testimony was false; and (3) that the false testimony took the defendant by surprise, either because he was unaware that it was false or because he was unable to counter it. United States v. Austin, 103 F.3d 606, 609 (7th Cir.1997); United States v. Fruth, 36 F.3d 649, 652 (7th Cir.1994), cert. denied, 513 U.S. 1180 (1995); United States v. Reed, 2 F.3d 1441, 1451 (7th Cir.1993), cert. denied, 510 U.S. 1079 (1994).
 
 
 6
 We take up the perjured testimony question first. Brennan asserts that he is entitled to a new trial in part because the government utilized perjured testimony from William Littlejohn. The district court made no finding as to whether Littlejohn's testimony was in fact false because the court found that that testimony did not even inculpate Brennan. Littlejohn's only mention of Brennan during his direct examination consisted of the following exchange:
 
 
 7
 With respect to the allegation that Avery had used and sold narcotics while housed on the sixth floor of the MCC, the district court found that there was no evidence that Avery's involvement with narcotics had been reported to anyone in authority. Thus, the court found that Brennan had not come forward with any evidence indicating that the government had knowledge of Avery's drug activity. In his affidavit, Dye purports to have personally seen Avery snorting cocaine at the MCC, but as the district court noted, Dye does not say that he or anyone else ever reported Avery's drug use to anyone at the MCC or the United States Attorney's office. Thus, there is no indication from Brennan's evidence that the government ever knew of Avery's alleged drug use. Furthermore, to the extent Dye asserts that Avery obtained drugs during conjugal visits at the Dirksen Federal Building, that assertion is inadmissible hearsay, as Dye's affidavit merely recounts what Avery is alleged to have told him. In his own affidavit, moreover, Avery denies that he ever possessed, used, or sold drugs while at the MCC. Avery further asserts that he was regularly subjected to random drug tests and that he never had a positive test. Avery also denies telling Dye or anyone else that he ever obtained narcotics during conjugal visits at the federal building. Based upon this evidence, we are in agreement with the district court that no evidentiary hearing was required before Brennan's motion could be denied. Dye's recounting of what Avery allegedly told him is clearly hearsay. It thus does not raise a factual question as to whether Avery actually obtained narcotics while at the Dirksen Building. The allegations of drug use and sales do not provide a basis for a new trial.
 
 
 8
 With respect to the alleged sexual encounters, we concluded above that Dye's reference to Avery obtaining drugs while on conjugal visits at the Dirksen Federal Building is inadmissible hearsay.[3] Dye's statement is the only reference in Brennan's evidentiary materials to conjugal visits at the federal building. For his part, Avery states in his affidavit that he never received any conjugal visits during his stay at the MCC. Thus, because of the hearsay nature of the allegation, there was no need for a hearing on this aspect of Brennan's claim. Insofar as Michael Corbitt purports to have seen Avery having sex with a woman in a cell at the MCC, Brennan has come forward with no evidence to suggest that that information ever was conveyed to the government. If the government lacked any knowledge of the incident, it could not be said to have "suppressed" the evidence. Finally, with respect to Martin's vague statement that Avery and Nick Ahrens were permitted by an MCC guard to have sex with a female inmate in a cell, the government established that Martin lacked personal knowledge of the incident because Ahrens had been transferred out of the MCC before Martin arrived. Thus, Martin's statement also was hearsay. Furthermore, there was no evidence that Martin or anyone else had reported the incident to government authorities prior to Martin's
 
 
 
 [3]
 The same is true of Littlejohn's statement to Eierman in 1995 that Avery had told him that an MCC guard was going to allow him to have sex with a woman in his cell