132 F.3d 37
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert M. LEVINE, Defendant-Appellant.
 No. 97-1836.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 28, 1997.*
Decided Dec. 30, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Jan. 7, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, Hammond Division.
 Before ALDISERT,** BAUER and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Robert M. Levine was tried by a jury and found guilty on July 3, 1991 of conspiring to use and using interstate commerce to effect murder for hire in violation of Title 18, U.S.C. §§ 1958 and 371. After the trial, Levine filed a motion for acquittal or a motion for a new trial which were denied by the district court. Levine then appealed his conviction to this Court, and on September 27, 1993, we affirmed the conviction. United States v. Levine, 5 F.3d 1100 (7th Cir.1993). On October 13, 1995, Levine filed another motion for new trial based on newly discovered evidence and also a motion for discovery and motion to strike affidavit which were all denied by Judge Lozano on March 25, 1997. Levine now appeals the district court's order denying his motion for new trial based on newly discovered evidence.
 
 
 2
 This new evidence focuses on the testimony of two trial witnesses: John Rinaldo and Louise Row.[1] Levine first encountered John Rinaldo while they were being held at the Metropolitan Detention Center in Los Angeles, California before Levine's trial. Rinaldo proclaimed himself a lawyer to Levine, and Levine attempted unsuccessfully to assert an attorney-client privilege regarding Rinaldo's testimony about the conversations between them at the detention center. Louise Row was a neighbor and former employee of Levine and his wife, Pat Steward. Row testified about a conversation she had regarding the murders. On appeal, Levine argues that the district court abused its discretion in denying his motion for a new trial based on this new evidence. Levine again contends that there is newly discovered, material evidence and, therefore, he is entitled to a new trial.
 
 
 3
 A district court's denial of a motion for a new trial is reviewed for an abuse of discretion. United States v. Morgan, 113 F.3d 85, 89 (7th Cir.1997) (citations omitted). This Court has articulated two tests to determine whether a new trial is warranted based on newly discovered evidence. Under the general test, a defendant must show: (1) the evidence was discovered after trial; (2) it could not have been discovered sooner; (3) the evidence is material and not merely impeaching or cumulative; and (4) it would probably lead to an acquittal in the event of a retrial. Furth v. United States, 36 F.3d 649, 652 (7th Cir.1994). However, when a motion for new trial is based on the assertion that a witness testified falsely, the test is more lenient. United States v. Reed, 2 F.3d 1441 (7th Cir.1993). Under Reed, a new trial should be granted when: (1) the court is reasonably well satisfied that the testimony given by a material witness was false; (2) the jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false; and (3) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial. Reed, 2 F.3d at 1451 (citations omitted).
 
 
 4
 With regard to John Rinaldo, Levine claims three categories of newly discovered evidence: (1) the charging documents pertaining to the crimes for which Rinaldo was incarcerated and facing at the time he testified for the government; (2) the details of Rinaldo's past criminal activity; and (3) a report prepared by FBI Agent DeSilva after an interview with Rinaldo. Levine claims that this newly discovered evidence was suppressed by the government before and during trial. Levine further argues that if the government had performed its disclosure and discovery duties properly, he would have been able to effectively use the material to impeach Rinaldo's testimony, to affirmatively establish his attorney-client privilege defense, and to uncover other discoverable material concerning Rinaldo.
 
 
 5
 Before continuing to address Levine's claims, we first dispose of the ludicrous argument that Levine asserts in an attempt to establish an attorney-client privilege defense with regard to Rinaldo's testimony. As a matter of law, where legal advice is sought from a professional legal adviser in a legal capacity, the communications relating to that purpose made in confidence are protected from disclosure. See John Henry Wigmore, EVIDENCE IN TRIALS AT COMMON LAW § 2292 (1904); see also United States v. White, 950 F.2d 426, 430 (7th Cir.1991). This privilege exists to protect the interpersonal relationships which are highly valued by society and vulnerable to deterioration if its privacy is not afforded protection by the courts. United States v. Bryd, 750 F.2d 585, 589 (7th Cir.1985). The Supreme Court, however, has recognized that this privilege must be narrowly construed because it is "in derogation of the search for truth which lies at the heart of a criminal trial." Id. For the privilege to apply, an attorney must be acting in his capacity as a professional legal adviser. Id. It is a farfetched argument that Levine, when talking with Rinaldo in prison, believed he was receiving legal advice. There is absolutely no indication that there was any semblance of any confidential relationship between Levine and Rinaldo other than fellow prison mates. Moreover, there is no evidence, whether newly discovered or old, that would convince us that Levine had a successful attorney-client privilege defense.
 
 
 6
 Now focusing on the categories of evidence Levine claims are newly discovered, Levine first contends that he did not have access to the charging information against Rinaldo and that it was the government's duty to supply him with the information. Levine claims that the government violated Brady v. Maryland, 373 U.S. 83 (1963), by suppressing this evidence. He argues that the government's suppression caused favorable, material evidence to be unavailable to Levine at trial and resulted in Levine being denied his 6th Amendment right of confrontation and right to present a defense along with his 5th Amendment right to a fair trial. To succeed on a Brady challenge, Levine must establish: "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." United States v. Silva, 71 F.3d 667, 670 (7th Cir.1995). Evidence is material only if there exists a "reasonable probability" that its disclosure to the defense would have changed the results of the trial. Kyles v. Whitley, 115 S.Ct. 1555, 1558 (1995). A reasonable probability of a changed result exists where the suppression of evidence undermines confidence in the outcome of the trial. Id.
 
 
 7
 The district court first suggested that although there was no clear indication on the record that Levine did have the material, there was some indication that he may have had access to the material during trial. If Levine did in fact have the material during trial, it would not be new evidence, and denial of the motion was proper. Alternatively, the district court recognized that even if the government did have the information but did not disclose it to defense counsel, Levine had access to the material because the charging materials were available in the public record. Documents that the prosecution fails to turn over are not suppressed under Brady if they are available in the public record and defense counsel should have known they existed. United States v. White, 970 F.2d 328, 337 (7th Cir.1992). We agree with the district court's conclusion that Levine should have been able to discover the charging materials with due diligence. Accordingly, the district court did not abuse its discretion in denying the motion.
 
 
 8
 Second, Levine argues that the FBI 302 Report prepared by Agent DeSilva qualifies as Jencks Act material which should have been provided to defense counsel after the witness testified. Levine argues that because the government never provided the report to Levine, he is entitled to a new trial. The Jencks Act requires the prosecution to. provide defense counsel with any specifically defined "statement" of a prosecution witness after the witness testifies. 18 U.S.C. § 3500. The Act defines the term "statement" as:
 
 
 9
 (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
 
 
 10
 (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
 
 
 11
 (3) a statement, however taken or recorded, or by a transcription thereof, if any, made by said witness to a grand jury.
 
 
 12
 18 U.S.C. § 3500. As a preliminary matter, the report prepared by Agent DeSilva is not automatically discoverable material under the Jencks Act. A report prepared by an FBI agent about his interview with a witness is not statement within the meaning of statement under the Jencks Act when the report is not substantially verbatim and was not recorded contemporaneously with the making of the statement. United States v. Foley, 871 F.2d 235, 238-39 (1st Cir.1989); see also United States v. Blas, 947 F.2d 1320, 1326-27 (7th Cir.1991). However, it is unnecessary for us to determine whether the report qualifies as Jencks Act material. The district court properly concluded that the report was not newly discovered evidence.
 
 
 13
 Defense counsel knew about this report and attempted to obtain it at a suppression hearing and at trial. Levine raises this issue in his motion for a new trial but failed to raise it on appeal. If the government failed to produce the report at trial or the district court failed to review the report in camera, Levine should have raised the issue in his first appeal, or the issue is deemed waived. We agree with the district court that the FBI report is not newly discovered evidence which would entitle Levine to a new trial.
 
 
 14
 Third, Levine argues that he was denied the use of impeachment evidence relating to Rinaldo's past crimes. He claims that more information on Rinaldo's criminal record would have helped Levine impeach his testimony. As discussed above, new evidence must be material and not merely impeaching or cumulative. Furth, 36 F.3d at 652. The details of his past criminal activity would not have added more weight to the fact that Rinaldo was a questionable witness; rather the information would be only cumulative. It was quite clear from defense counsel's cross examination that Rinaldo's credibility was extremely sketchy and that counsel more than adequately impeached Rinaldo's testimony. As the district court pointed out, an attempt to further smear a witness whose character has already been thoroughly impeached is unnecessary. See United States v. Nelson, 39 F.3d 705, 709-719 (7th Cir.1994). In sum, this new evidence would not have materially changed defense counsel's characterization of Rinaldo. The evidence is mostly cumulative and would have added nothing to Levine's efforts to impeach Rinaldo.
 
 
 15
 The district court alternatively held that even if defense counsel could have obtained this material (or as Levine identifies it as newly discovered evidence) and presented it at trial, this information in total would not have changed the outcome of the trial. For Levine to prevail, this information must create a reasonable probability that the result of the trial would have been different had this evidence been presented. Silva, 71 F.3d at 670. Judge Lozano indicated that he was unsure whether this evidence was newly discovered and whether the evidence would have even been admissible at trail.[2] Assuming the evidence would have been admissible, the district court held that it was inconsequential, unpersuasive, and not material and therefore not sufficient to support a motion to grant a new trial. We too are confident that even if the alleged new evidence had been presented at trial, the outcome would not have been any different. Accordingly, the denial of Levine's motion for new trial was proper.
 
 
 16
 Finally, with regard to Rinaldo, Levine argues that Rinaldo falsely testified at trial and that evidence of this false testimony is sufficient to grant Levine's motion for a new trial. We disagree. The jury was aware of Rinaldo's lack of credibility. In addition, Levine's counsel attacked his testimony at every point throughout the trial. The government's case did not rest solely on Rinaldo's testimony; there was more than sufficient evidence to convict Levine. The alleged false testimony given by Rinaldo is inconsequential, and we agree with the district court that "the fact that Rinaldo was lying would not add much to the many blots on his character that were brought out during his testimony." Judge Lozano's District Court Order, March 25, 1997 at 22 (citation omitted).
 
 
 17
 Next with regard to the testimony provided by Louise Row, Levine argues that there is newly discovered evidence pertaining to the transcripts of Row's interviews with the police. He argues that the transcripts which were given to defense counsel are incomplete and that the government suppressed the complete transcripts. The government admitted that the transcripts were incomplete. However, the government only had access to incomplete transcripts. The final part of the transcripts of the police's interview with Louise Row was lost, and Levine had everything the government had.
 
 
 18
 Levine supports this argument with affidavits taken from Row after trial. These affidavits, however, are not new evidence. Ms. Row was available and in fact testified at trial. Levine had ample opportunity to question her about the gaps in the transcripts. The district court did not find any merit in Levine's argument that there was new evidence pertaining to Louise Row. We agree with the district court that Levine did not present any newly discovered evidence. Therefore, the denial of his motion was not an abuse of discretion.
 
 
 19
 The district court did not find any merit in Levine's argument that there is newly discovered evidence to support the grant of a new trial. For the most part, the evidence Levine wants us to consider is not new evidence; rather, it is evidence that either does not exist or was considered by the trial court. The district court rejected Levine's arguments and denied the motion. We too conclude that Levine is not entitled to a new trial. Accordingly, we AFFIRM the district court's order denying Levine's motion for a new trial.
 
 
 
 *
 After an examination of the briefs and record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 **
 The Honorable Ruggero J. Aldisert, Judge of the United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 The motion denied by Judge Lozano included a third trial witness Bruce McKinney and asserted that there was newly discovered evidence relating to his testimony. McKinney is the person Levine hired to kill Levine's brother, his brother's wife, and his brother's son. He testified that Levine recruited him to kill his family members. The district court concluded that Levine abandoned this aspect of his motion because he did not address or support this argument in his reply brief. Levine does not address this issue in the present appeal, thus we do not consider it
 
 
 [2]
 Evidence that would not have been admissible at trial is immaterial because it could not have affected the trial's outcome. See United States v. Veras, 51 F.3d 1365, 1375 (7th Cir.1995)