In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-2819

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES WOODS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-CR-10089—**Michael M. Mihm**, *Judge.*

ARGUED JUNE 7, 2002—DECIDED AUGUST 20, 2002

Before BAUER, POSNER, and RIPPLE, *Circuit Judges.*

BAUER, *Circuit Judge.* Charles Woods was convicted of distributing narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Before sentencing he filed a motion for a new trial based on newly discovered evidence. The district court denied the motion and sentenced Woods to 360 months for each count, to run consecutively. Woods appeals his conviction arguing: (1) the district court improperly admitted certain tape recordings; (2) the admission of the tape recordings violated his Sixth Amendment right to confrontation; and (3) that the district court erred in not granting his motion for a new trial based on newly discovered evidence. Although a small portion of one of

the recordings was erroneously admitted, we conclude this minor error does not justify reversal.

**BACKGROUND**

Charles Woods was the ringleader of a crack distribution network in Peoria, Illinois. The crimes also involved Towanda White (Woods' girlfriend) and Melvin Rogers.

Beginning in June 1999, the FBI made a series of controlled drug buys from Woods and his associates. The FBI used confidential informants, Orlando Davis and David Roberson, to set up the transactions. The conversations between the informants and the sellers were recorded by the FBI. We will refer only to the recordings at issue in this appeal.

On July 26, 1999, David Roberson contacted Woods using a pager number. Woods then called Roberson and the conversation between them was recorded. The FBI positively identified Woods as the caller. During the call, Roberson set up a drug purchase at a fast food restaurant in Peoria. Roberson was then fitted with a recording device, given $475 to buy drugs, and driven to the restaurant. While at the restaurant Roberson made additional calls, and each time only Roberson's side of the conversation was recorded by the device on his person. A few minutes later, Rogers met Roberson at the restaurant and sold him 9.6 grams of crack for $465.

On August 9, 1999, Orlando Davis contacted Woods using the same pager number as that used by Roberson. Woods returned Davis' page, and agreed to sell crack to Davis. The entire conversation was recorded by the FBI. Woods instructed Davis to page Towanda White and set up a meeting place. Davis was outfitted with a recording device and went to a pay phone to page White. White did not return Davis' page, so Davis again called Woods,

this time from the pay phone. Only Davis' side of the conversation was recorded. Davis then proceeded to a fast food restaurant where he met with White. White informed Davis that she did not have the drugs on her and would need to go get them. White later returned and sold crack to Davis. While waiting at the restaurant for White, Davis made some narrative statements about the surroundings and events (the defense refers to them as "monologues").

On August 6, 1999, Rogers was shot nine times, and while he was in the hospital on August 9, 1999, Woods came to visit. Woods made a phone call while in Rogers' hospital room. Rogers repeated to the jury what he heard Woods say on the phone.

Davis, White, and Rogers testified at trial, the government was unable to locate Roberson. Davis was a paid confidential informant; White and Rogers testified against Woods as part of separate plea agreements.

During a status call on February 16, 2001, it was disclosed that a news reporter had informed the government that Rogers had denied, in state court proceedings, that his shooting had anything to do with drugs. The defense then began investigating Rogers' testimony about the August 9th phone call made by Woods from Rogers' hospital room. The defense found that hospital policy limited the total number of visitors for a person who is a victim of a crime of violence for the entirety of his or her hospital stay. (The limitation was one clergy member and four other persons.) Prior to August 9, 2001, Rogers stated that he was visited by four persons, none of whom was a clergy member. Based on this information, Woods argued that Rogers was lying about Woods ever being in his hospital room.

**ANALYSIS**

On appeal, Woods claims three errors entitle him to a new trial. First, Woods challenges the admission of the recordings of the phone conversations in which only Davis' and Roberson's sides were recorded. Second, Woods challenges Davis' "monologue" statements in which he described the events surrounding the transaction to the FBI agents listening. (The district court initially admitted the statements on the basis that they provided context. Subsequently, the district court changed that ruling, admitting the statements as present sense impressions.) Woods argues that the admission of the taped commentary was erroneous because it violated his Sixth Amendment right to confrontation and because the statements were hearsay, qualifying under no recognized exception to the rule. Finally, Woods argues that the newly discovered evidence shows Rogers was lying, and that it could have been used to impeach Rogers' testimony. We shall address each argument in turn.

## A. *Sixth Amendment Right to Confrontation*

The government argues that Woods waived or at least forfeited his Sixth Amendment argument by failing to make a specific objection to the admission of the tapes. Waiver precludes review, whereas forfeiture permits review under a plain error standard. *United States v. Olano*, 507 U.S. 725, 732-34 (1993). Waiver is "the 'intentional relinquishment or abandonment of a known right'", while forfeiture is "the failure to make the timely assertion of a right". *Id.* (citations omitted). Forfeiture occurs by accident, neglect, or inadvertent failure to timely assert a right. *Id.*; *United States v. Cooper*, 243 F.3d 411, 415-16 (7th Cir. 2001). Wavier occurs when a defendant or his attorney manifests an intention or expressly declines to assert a right. *Cooper*, 243 F.3d at 415-16. We may

correct a plain error if it meets three criteria ((1) there is indeed an error, (2) it is plain, clear or obvious, and (3) it affects substantial rights), although we still are not required to "notice" or "correct" it. *Olano*, 507 U.S. at 732-34; *see also* FED. R. CRIM. P. 52(b). Regardless of whether we find the argument waived or forfeited, there is an overriding problem with Woods' confrontation clause argument; no violation actually occurred.

At trial, Woods argued that because Roberson did not testify at trial, the audio tapes were hearsay. The recordings of Woods' phone conversations were not hearsay and were properly admitted as statements by a party-opponent. FED. R. EVID. 801(d)(2)(A); *United States v. Hubbard*, 22 F.3d 1410, 1417 (7th Cir. 1994). Roberson's side of the conversations were admissible either because they provide context or because they were adopted by Woods during the course of the conversation. FED. R. EVID. 801 (context); *United States v. Gajo*, 290 F.3d 922, 929-30 (7th Cir. 2002) (holding statements of an informant may be admitted as non-hearsay to provide context to a conversation) (citing cases); FED. R. EVID. 801(d)(2)(B) (adoptive admissions); *United States v. Rollins*, 862 F.2d 1282, 1296 (7th Cir. 1988). During the discussion and negotiation of the drug purchase, Woods either led or responded to each of Roberson's requests and questions about the time, place, and terms of the transaction. At no time did Woods contradict Roberson's comments or questions regarding the purchase of drugs or tell Roberson that he was mistaken or had the wrong number. The context of the conversation between Woods and Roberson manifested Woods' intent to adopt Roberson's statements. *United States v. Allen*, 10 F.3d 405, 413-14 (7th Cir. 1993) ("From the entire context of each conversation (including the non-verbal cues the jury could see in the tapes), along with Allen's failure to contest any incriminating statements, the district court and the jury could find that Allen adopted Joiner's statements."). Moreover, the state-

ments are material, probative, and reliable, hence they would come in under the catchall exception. FED. R. EVID. 807.

If statements are admissible because they are non-hearsay, there is no confrontation clause problem. *Martinez v. McCaughtry*, 951 F.2d 130, 133-34 (7th Cir. 1991); *see also Tennessee v. Street*, 471 U.S. 409, 414 (1990). If the statements are Woods' own—either by virtue of the fact he made or adopted them—there is no hearsay and no confrontation problem because the witness against the defendant is himself. *See Allen*, 10 F.3d at 413-14; *Rollins*, 862 F.2d at 1297.

In addition, the issues that Woods sought to cross-examine Roberson on (his motive and reasons for testifying) were already before the jury. The jury knew Roberson was a paid informant and cross-examination on this point would have added nothing. *Cf. United States v. Scott*, 145 F.3d 878, 888 (7th Cir. 1998) ("So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised."). The tape recordings of Woods' voice was the evidence against him, not testimony by Roberson pointing the finger at Woods. *Cf. United States v. Martin*, 287 F.3d 609, 621 (7th Cir. 2002), *petitions for cert. filed* (U.S. Jul 16, 17, & 18, 2002) (Nos. 02-109, 02-5475, & 02-5442).

Moreover, Woods did not dispute the substance of the conversations. Rather, he disputed whether he participated in the conversations at all. At trial, an FBI agent identified Woods' voice on the tapes, and Woods had an opportunity to cross-examine the agent.

B.  *Admission of Hearsay Statements*

Since the tape recordings of Woods' conversations with Roberson are not hearsay, that leaves only the narrative

statements by Davis to consider.[1] (Davis' side of the phone conversations are not hearsay for the same reasons Roberson's are not; they are adoptive admissions or come in under the catchall exception. FED. R. EVID. 801(d)(2)(B), 807.)

Again, the government asserts that Woods has waived or forfeited the hearsay argument. From the transcripts, the motion *in limine*, and the motion for a new trial, it appears that Woods made a series of hearsay objections to the various recordings introduced by the government. Therefore, we review for an abuse of discretion. *Gajo*, 290 F.3d at 926. However, a guilty verdict will only be reversed if the evidentiary error had "a substantial and injurious effect or influence on the jury's verdict." *United States v. Hanson*, 994 F.2d 403, 407 (7th Cir. 1993) (quotation omitted). The defendant bears the burden of establishing the error had a substantial and injurious effect on the verdict. *Id.*

The district court admitted Davis' recorded narrative under the present sense impression exception. Under Federal Rule of Evidence 803, "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is admissible regardless of whether the declarant is available to testify at trial. In determining whether a statement meets the conditions of Rule 803, we have sought to determine, in addition to the predicates listed in the rule, if the statement was made without "calculated narration". *United States v. Ruiz*, 249 F.3d 643, 646-47 (7th Cir. 2001). The calculated narration consideration is based on the rule's require-

---

[1] Woods conceded that the other statements by Roberson and Davis were admissible under various exceptions to the hearsay rule.

ment that the statement be "made *while* the declarant was perceiving the event". FED. R. EVID. 803(1) (emphasis added). The exception is based on the theory that it is less likely for a declarant to "deliberate or conscious[ly] misrepresent" the event if there is "substantial contemporaneity" between the statement and the event. FED. R. EVID. 803, Advisory Committee Notes (1972); *United States v. Parker*, 936 F.2d 950, 954 (7th Cir. 1991). A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near simultaneous perceptions.

Parts of Davis' narratives are simple descriptions of events as they occurred, which meet the requirements of the rule. *See Ruiz*, 249 at 646-47. However, some of the narrative statements are clearly addressed to the FBI agents listening in via the microphone. These statements were made for the benefit of the agents—*i.e.*, were calculated and provided for a reason—and are not admissible under the present sense impression exception.

Nevertheless, the improper admission of these few short lines of commentary could not have had a substantial influence on the jury's verdict. Davis' comments, which are not part of any phone conversation, consist of somewhat less than one hundred words, most of it irrelevant rambling. In sum, he described a car, who he thought was driving and owned it, and, as the car drove away, he rattled off the license plate number. These few remarks were harmless, especially when considered against the mountain of incriminating evidence, including taped conversations of drug transactions and coconspirator testimony. *Cf. United States v. Jarrett*, 133 F.3d 519, 528-29 (7th Cir. 1998).

C. *Motion for a New Trial*

We review the district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Pigee*, 197 F.3d 879, 888 (7th Cir. 1999); *United States v. Payne*, 102 F.3d 289, 291-92 (7th Cir. 1996). As Woods claims he was convicted by false testimony, he must show the new evidence meets four requirements in order to obtain a new trial.[2] *United States v. Austin*, 103 F.3d 606, 608-09 (7th Cir. 1997); *see also* FED. R. CRIM. P. 33. Woods need demonstrate that the new evidence: (1) was discovered after the trial; (2) could not have been discovered earlier with due diligence; (3) is material, not simply cumulative or impeaching; and (4) would probably lead to a verdict of acquittal. *Austin*, 103 F.3d at 608-09. Although the evidence was brought to light by the prosecution after trial, Woods cannot satisfy the other three parts of the test.

Woods was aware of Rogers' testimony regarding the phone call made from his room prior to trial and could have, but chose not to investigate further.

In addition, Woods' claim that Rogers' testimony was false rests on several assumptions fatal to his claim. There is nothing in the record as to whether or not Rogers was classified by the hospital as a victim of violence (common sense would say he should have been), but, more importantly, there is nothing to show that the general hospital policy limiting the number of visitors to a victim of a violent crime was followed on the day in question. (If Rogers was not classified as a victim of violence, he

---

[2] We apply the "general" rather than the specific "false testimony" test because the threshold requirement for the applicability of the latter test—that the district court was "reasonably well satisfied" the "testimony was, in all likelihood, false"—was not met. *United States v. Fruth*, 36 F.3d 649, 652 (7th Cir. 1994).

would have been entitled to an unlimited number of visitors.) Further, the hospital does not keep records pertaining to who visited a particular patient.

Finally, Woods asserts that Rogers' testimony in the state proceeding shows his later federal testimony was false because Rogers did not state that Woods was a visitor when testifying in the state proceeding. The problem with this hypothesis is that Rogers' state testimony regarding visitors pertained only to August 7, 1999, and Woods visited on August 9, 1999.

The evidence presented by Woods as newly discovered evidence is, at best, cumulative impeachment evidence that could have been obtained before trial with minimal investigation. *See Fruth*, 36 F.3d at 653.

## CONCLUSION

The defendant's conviction is AFFIRMED.

A true Copy:

       Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*