UNITED STATES of America, Plaintiff–Appellee,

v.

Paul L. MAGEE, Defendant–Appellant.

No. 02–3899.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 2003.

Decided May 29, 2003.

Before BAUER, MANION, and DIANE P. WOOD, Circuit Judges.

### ORDER

A jury found Paul Magee guilty on two counts of armed bank robbery, 18 U.S.C. § 2113(a), (d), and two counts of the lesser-included offense of bank robbery, *id.* § 2113(a). After denying Magee's motion for a new trial, *see* Fed.R.Crim.P. 33, the district court imposed concurrent 198–month terms on the armed robbery convictions. (The court did not enter judgment on the lesser-included counts.) Magee appeals, contending that the court improperly denied his motion for a new trial, and we affirm.

In August 2001 a grand jury indicted Magee along with Dion Freeman and Charles Spires. Freeman and Spires entered guilty pleas and testified at Magee's trial, where the government presented the following evidence. Freeman met Magee during the fall of 2000 while both were living at the Victory Arms apartment complex in Gary, Indiana. Magee sold $100 worth of crack to Freeman on credit, but Freeman did not pay the debt. Several weeks later, on October 26, three men exited what Freeman thought was a Dodge Intrepid and approached him outside the Victory Arms. Freeman fled down the block and was shot in the leg and back before he could make it to the safety of a nearby fire station. Freeman could not identify the shooter, but he recognized that the assailants included Magee, fellow drug dealer Chepeka Mack, and a man named Jeremiah.

Freeman recovered from his wounds and assumed that the October 26 shooting had satisfied his debt to Magee, but he was wrong. On February 9, Magee and Spires confronted Freeman at the Victory Arms and forced him to go with them to Michigan City, Indiana, ostensibly to discuss "what happened" on October 26. Along the way, Magee told Freeman that he still needed to pay his debt and could do so by helping them rob a bank. Freeman reluctantly agreed, and after stopping off at an apartment to get supplies–including bags, a pen, and paper (on which Magee wrote a robbery note)–all three set off for the Bethlehem Employees Federal Credit Union in Michigan City. Magee instructed Freeman to enter the bank, where he displayed a gun and the robbery note, demanded money from a teller, and left with $5,670.

According to Spires, Magee decided a month later that they should rob the same credit union again. Spires testified that he refused to participate because they had just robbed the bank–though he did help Magee try to locate Freeman and enlist him to go along. According to Spires, they could not find Freeman, so he arranged for his roommate, Aaron Young, to accompany Magee. Young did not testify at Magee's trial, but Spires told the jury that Magee admitted to driving Young to the bank on March 16 and to waiting outside as Young took cash from a teller.

A third robbery occurred on April 27. Freeman that day received another visit from Magee, who was accompanied by Mack (one of the drug dealers with Magee when Freeman was shot on October 26). They arrived in a Dodge Intrepid, which according to Freeman was the same car that had been used to corner him back in October. Magee told Freeman that his drug debt remained unpaid and warned that his girlfriend would be killed unless he helped commit another robbery. Magee, Freeman, and Mack then went in the Intrepid to a strip mall in Hobart, Indiana, which housed a branch of the credit union, and there Freeman took over $10,000.

A local police officer heard about the robbery on his police radio, and after spotting the Intrepid, he followed the car toward Gary. Mack, who was driving, momentarily eluded the officer but lost control of the car when he made a sharp left turn. Magee meanwhile had tossed Freeman's sweatshirt, the gun used in the robbery, and the stolen cash out the Intrepid's window. Then before Mack could get the Intrepid back underway, Freeman and Magee hopped out and ran in different directions. Later that day, Magee returned with Spires to the area where he had abandoned the proceeds of the robbery, but they were unable to find the money.

The jury found Magee guilty of the February 9 and April 27 robberies but not guilty of the March 16 robbery. Magee timely moved for a new trial under Fed. R.Crim.P. 33, contending that he recently had unearthed evidence to contradict Freeman's trial testimony. In support of the motion Magee first pointed to records obtained from Indiana's Bureau of Motor Vehicles. Magee submitted these documents to show that the Dodge Intrepid driven in the April robbery could not have been used to chase down Freeman on October 26, despite Freeman's testimony that the same car had been involved in both incidents. Specifically, a certificate of title shows that a couple (who later told the FBI that they never had met Mack) traded the Intrepid at a dealership the week before the October 26 shooting. A certificate reflecting payment of sales tax, however, shows that Mack bought the car (from a different dealership) the following December–nearly two months after Freeman was shot.

Magee also submitted three sworn declarations to demonstrate that he did not participate in Freeman's shooting. Dennis Ryan, the longtime boyfriend of Magee's mother and former "security guard" at the Victory Arms, attested that he and Magee were in the hallway of the apartment complex when they heard the shots that struck Freeman. Clarence Pointer said that while standing outside a liquor store he saw Freeman fleeing and observed that Magee was not among the men in pursuit. And according to Tabitha Isabell (who also lived at the Victory Arms), Freeman told her that someone other than Magee had shot him, but she could not recall whom Freeman identified.

The district court concluded that Magee's evidence did not entitle him to a new trial and denied the motion in a written memorandum. On appeal Magee argues only that the court improperly denied the motion–a ruling that we review for abuse of discretion. *United States v. Hodges,* 315 F.3d 794, 801 (7th Cir.2003). The district court here evaluated Magee's motion under the four-part test ordinarily applied to motions under Rule 33. The court considered whether the evidence (1) was discovered only after trial, (2) could not have been discovered earlier through due diligence, (3) is material and not merely impeaching or cumulative, and (4) probably would lead to acquittal in the event of a new trial. *See id.; United States v. Woods,* 301 F.3d 556, 563 (7th Cir.2002).

The district court determined that Magee's evidence did not satisfy the last three elements. Not only could Magee have discovered the "new" information through due diligence, the court reasoned, but all it showed is that Freeman had misidentified Magee as one of men who chased him on October 26 and that he also had mistaken the car driven by his assailants for the Intrepid used in the April 27 robbery. The court accordingly concluded that Magee might have used the information to impeach Freeman but that he would have

been convicted anyway given the other evidence in the case.

Magee insists that the district court applied the wrong test. He points out that in *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928), we articulated a specific test for Rule 33 motions premised on allegedly false testimony. Under this test, Magee contends, the district court should have granted his motion. The *Larrison* test applies where (1) the district court is "reasonably well satisfied" that a material witness testified falsely, (2) the jury might have reached a different conclusion absent the testimony, and (3) the party seeking a new trial was blindsided by the false testimony or did not learn of its falsity until after trial. *Id.* at 87–88; *see United States v. Westmoreland,* 240 F.3d 618, 636–37 (7th Cir.2001).

Magee wrongly faults the district court for using the general test for Rule 33 motions instead of the *Larrison* test. As the government points out, the *Larrison* test applies only if at the outset the district court is "reasonably well satisfied" that a material witness testified falsely. *United States v. Austin,* 103 F.3d 606, 609 (7th Cir.1997); *United States v. Fruth,* 36 F.3d, 649, 652 (7th Cir.1994); *see also United States v. Severson,* 49 F.3d 268, 271 n. 1 (7th Cir.1995). And here the district court identified the competing tests and concluded that Freeman did not give materially false testimony (and that Magee's motion flunked the second part of the *Larrison* test as well).

The court's factual finding that Freeman did not testify falsely in any important respects is reviewed for clear error. *United States v. Pigee,* 197 F.3d 879, 888 (7th Cir.1999); *Austin,* 103 F.3d at 609. Magee makes no effort to explain how the finding is clearly erroneous. Instead, he simply asserts that Freeman's testimony about his role in the October 26 shooting is "highly suspect" and that Freeman's testimony about seeing the Dodge Intrepid before the shooting was "obviously" false.

The district court, however, reasonably could assess the evidence differently. With respect to Magee's participation in the shooting, the judge was entitled to credit Freeman's version of events over that presented in the three declarations submitted by Magee. *E.g., United States v. Pedroza,* 269 F.3d 821, 825–26 (7th Cir. 2001). And as for the presence of the Intrepid, the court likewise could reasonably find that the records from the Bureau of Motor Vehicles suggest only that Freeman had misidentified the car used to chase him down—a minor discrepancy that would not warrant a new trial. *See Austin,* 103 F.3d at 609; *see also Pigee,* 197 F.3d at 888.

So the district court rightly analyzed Magee's Rule 33 motion under the general test. Magee makes no argument that under this test the district court abused its discretion by denying his motion. Such an argument in any event would be futile. The evidence offered by Magee does not contradict Freeman's account of the two bank robberies that Magee was convicted of committing. At most the evidence shows that as Freemen fled from three men who were shooting at him he did a poor job of observing his attackers and the model of their car.

This information might have been useful in impeaching Freeman. But ordinarily newly discovered impeachment evidence does not warrant relief under Rule 33. *See Woods,* 301 F.3d at 563; *Fruth,* 36 F.3d at 653. True, Rule 33 does not draw a categorical distinction between the kinds of evidence that will justify holding a new trial. Newly discovered impeachment evidence can be enough on its own, for example, in the rare case where the conviction depends entirely on the uncorroborated

testimony of a single witness who turned out to be totally unbelievable. *United States v. Taglia*, 922 F.2d 413, 415 (7th Cir.1991); *see also United States v. DePriest*, 6 F.3d 1201, 1217 (7th Cir.1993).

But Magee does not have one of the rare cases. First, Spires largely corroborated Freeman's account of the two robberies underlying Magee's convictions. Spires testified that on February 9 Magee told him about a "crackhead" he knew who would help them rob a bank. Spires then described how he, Magee, and Freeman drove to the credit union, how Freeman committed the robbery, and how they divided up the money afterwards. Spires also told the jury that on April 27 Magee lamented that he had just robbed another bank but was forced to toss the loot and a gun during the getaway. Spires then explained how he helped Magee search for the missing cash, which they were unable to find.

What is more, the district court actually found that Freeman's testimony about who chased and shot him on October 26 *was* believable and that his testimony about the model of car used in the attack–though possibly wrong–was inconsequential. So even if Freeman's testimony had been entirely uncorroborated, or if the jury had not believed Spires or any of the government's other witnesses, the newly discovered impeachment evidence presented by Magee still would not require a retrial. The district court therefore acted within its discretion by denying Magee's Rule 33 motion, and its judgment is

AFFIRMED.